[No. G010977. Fourth Dist., Div. Three. Sept. 25, 1991.]

THOMAS FRANK MANISCALCO, Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Joanne Harrold for Petitioner.

No appearance for Respondent.

Michael R. Capizzi, District Attorney, Maurice L. Evans, Chief Assistant District Attorney, John D. Conley, Assistant District Attorney, Kathleen M. Harper and Gregg L. Prickett, Deputy District Attorneys, for Real Party in Interest.

**OPINION**

**CROSBY, J.**—Thomas Frank Maniscalco is charged with three murders and faces a potential death penalty. The superior court removed his three appointed counsel after the first trial ended with a hung jury, and he sought writ relief from a portion of that order.[1] We denied the petition summarily, but the Supreme Court granted review and retransferred the matter to us with directions to issue an alternative writ. After a full hearing on the merits, we once again deny the petition.

■ Article I, section 29 of the California Constitution states, "In a criminal case, the people of the State of California have the right to due

---

[1] The petition is somewhat unclear in that it persistently uses the word "counsel," which can be singular or plural. But a careful reading persuades us Maniscalco only objects to the removal of his lead attorney, Joanne Harrold. Consequently, we confine our review to that question.

process of law and to a speedy and public trial."[2] This provision was undoubtedly inspired by aberrational cases like this one, which has wended its way through the criminal justice system with all the lassitude of an underpowered tramp steamer drifting through the tropics.

The killings were committed in May of 1980. Maniscalco and a codefendant were accused in March 1984, and both have been in custody ever since.[3] Joanne Harrold and Andrew Roth were appointed to represent Maniscalco. The case languished in the system until trial began in 1989.[4] After seven weeks of deliberations, the deadlocked jury was discharged on November 6, 1990. When Harrold suffered recurrence of a spinal disc problem near her neck, yet a third attorney, Steven Harmon, was added to the defense team to prepare motions.

In April of this year, the district attorney sought Harrold's removal. This unusual circumstance was occasioned by the following events:[5] During the trial itself, Harrold's health problems caused weeks to be lost and resulted in numerous recesses and shortened sessions. Roth would not proceed without her.

After the mistrial the prosecution sought an immediate retrial. The defense objected, and the court declined. Another series of frustrating delays followed. Finally, the judge ordered all pretrial motions to be submitted by January 14, 1991.[6] Roth advised on January 9 that the defense could not meet the deadline. When it came and went, the court convened a status conference.

Roth appeared without Harrold on February 6 and presented letters from physicians indicating she was unavailable because of a neck injury dating

---

[2]This provision was part of Proposition 115, but is applicable even though these offenses preceded its passage. (*Tapia* v. *Superior Court* (1991) 53 Cal.3d 282, 299 [279 Cal.Rptr. 592, 807 P.2d 434].)

[3]The cases have been severed. The plan, at least until now, has been to try the codefendant second, although the prosecution says it would like to proceed on both cases as soon as possible. Apart from the plight of the codefendant, adding to the urgency of resolving Maniscalco's guilt or innocence is, we are told, that an important prosecution witness has acquired immune deficiency syndrome.

[4]In fairness to Harrold, from our numerous previous encounters with this case in writ petitions, the prosecution and an incompetent court reporter made significant contributions to the delay at the indictment stage. And considerably more time was lost in proceedings to challenge a judge who eventually stepped down after the Supreme Court directed us to hear a writ petition attacking his initial refusal to do so.

[5]In *Vangsness* v. *Superior Court* (1984) 159 Cal.App.3d 1087, 1091-1092 [206 Cal.Rptr. 45], we warned, "In matters involving sensitive questions of selection of counsel for indigent defendants . . . , the district attorney has little to gain and much to lose in allowing himself to become involved in the matter." The advice is still good, but there are exceptional cases. This is one.

[6]There should not be many new motions to prepare. The defense filed more than 200 before the first trial. The motion work would seemingly involve more updating and photocopying than original research.

from December of 1990.[7] Several more continuances ensued. On April 18, all defense counsel appeared. Harrold stated she had recovered, but was unable to work on the matter for several months. Her doctor could offer no guarantees. But, somewhat equivocally, he testified her condition had stabilized and would not necessarily sideline her again, assuming she followed his instructions concerning the care of her spine.

The court asked Roth whether he would be able to carry on at trial without Harrold in the event she was disabled anew. Naturally, he needed a continuance to ponder this rather obvious inquiry. Two weeks later Roth gave a surprising answer: He declared a conflict of interest and sought to be relieved. That request was heard and denied by Judge Donald A. McCartin.

Then, resuming before Judge Kathleen O'Leary, who presided at the first trial and was slated to handle the second, Roth stated he would not be willing to carry on in Harrold's absence.[8] So did Harmon. After hearing from Harrold's doctor and examining counsel's sealed declaration, the court made extensive findings and removed all three attorneys.[9]

Judge O'Leary had no choice. Based on abundant evidence in the record, she found: (1) Harrold's neck injury forced a three-week recess in the first trial and "three or four weeks we worked two or three hours a day so she could continue with her physical therapy and her medical treatment." (2) The motions deadline was missed in January because Harrold was again experiencing problems with her neck. (3) The trial was put over several more times for the same reason. (4) A third attorney had to be appointed to prepare the motions.[10] (5) Harrold's prognosis was far less rosy than she claimed because her doctor testified the neck condition stems from "long-term

[7]This was an aggravation of the condition that dogged Harrold at trial.

[8]Asked if he would continue as counsel with a replacement for Harrold, Roth, who has been sustained on this cruise by the fisc for seven years, *declined* to answer.

[9]We have examined Harrold's declaration. Ironically, it might have supported her removal on another ground, although this is not a basis for our decision. Generally, she claims to have extensive knowledge concerning the matter that no one else possesses. Her sources include the defendant and numerous witnesses she has allegedly interviewed alone. There are no tapes and only scanty notes concerning these interviews. Some of the witnesses will only talk to her, she claims.

We find that difficult enough to swallow, but that a defense attorney in a capital case would confide her client's life to her own imperfect and mortal memory is truly astonishing (even during a period when the district attorneys' lobby has sought and obtained several victories in a relentless effort to expand discovery for prosecutors). Moreover, when an attorney interviews someone alone without a tape recorder, she is in the intolerable position of being unable to impeach the witness without facing potential recusal. Thus, Harrold appears to have unconscionably risked Maniscalco's defense and the public's investment in her efforts.

[10]From the limited record supplied to us, it is difficult to determine what Roth's role was. He apparently took no part in interviews and could not or would not do motions. Indeed, the

degeneration based upon age [and] prolonged poor posture in the past . . . [rather than] any specific incident of trauma" and her future health was impossible to predict.[11] (6) The December relapse probably resulted from her failure to follow his instructions. (7) The court had done everything it could to accommodate Maniscalco's choice of counsel,[12] but Harrold's medical problem threatened to delay this aging prosecution beyond all reason. (8) Roth's refusal to proceed in Harrold's possible absence suggested his lack of confidence in her health. And (9) his disinclination to go on without her, even with a replacement, left the court no choice but to remove all three attorneys.

■ There is no Sixth Amendment right to "a meaningful attorney-client relationship." (*Morris* v. *Slappy* (1983) 461 U.S. 1, 13 [75 L.Ed.2d 610, 621, 103 S.Ct. 1610].) In *Slappy* a California trial court's refusal to grant a continuance to allow defense counsel to recover from illness and decision to appoint a new lawyer over defendant's belated objection was upheld by the United States Supreme Court. ■ But this state's Supreme Court has been somewhat more circumspect: "Counsel may . . . be relieved on the court's own motion, even over the objections of defendant or counsel. Although the judge has the discretion to overrule defendant's choice of counsel in order to eliminate potential conflicts, ensure adequate representation, or prevent substantial impairment of court proceedings, this discretion has been severely limited by California decisions." (*People* v. *McKenzie* (1983) 34 Cal.3d 616, 629 [194 Cal.Rptr. 462, 668 P.2d 769].) Based on our review of the record (see fns.), we think any of these grounds probably could have supported Harrold's recusal; but we focus only on the one utilized below.

In *People* v. *Lucev* (1986) 188 Cal.App.3d 551 [233 Cal.Rptr. 222], the Court of Appeal found removal of a deputy public defender, who had represented the defendant for some 18 months, justified where she failed "to give adequate reasons for seeking a 13-week continuance, other than saying she needed time to prepare motions and to conduct further investigation— with no assurances she would be ready to go to trial at the end of the 13-week period . . . ." (*Id.* at p. 557.) ■ We agree that against the

---

implication of Harrold's declaration is that he was not even privy to the results of her investigation. She claims to be indispensable, and Roth has agreed at every turn.

[11]The court noted, "When asked whether she could continue to represent Mr. Maniscalco through a lengthy trial, [the doctor] indicated at one point that there was a good likelihood, and at another point a reasonable likelihood, and at another point it is just impossible to say."

[12]This included an interminable delay of a serious criminal matter pending against Harrold herself and Roth and Harrold undertaking to represent criminal defendants in another county who were known to be important prosecution witnesses against Maniscalco without seeking leave of court to engage in this seemingly clear conflict of interest. (Ultimately, all interested parties waived the issue, although experience tells us this may not be the end of it.)

right to counsel "other values of substantial importance, such as assurance of an orderly and speedy determination of criminal charges, must be considered." (*Id.* at p. 556.) And the record in this case is incomparably stronger than that of *Lucev* in support of the court's order.

The judge was faced with an intolerable situation. The crimes occurred a very long time ago. The case took forever to get before a jury, and the duration of the trial itself bordered on the obscene. A codefendant has luffed in the system for some *seven* years awaiting the conclusion of Maniscalco's prosecution. The defense team could not or would not honor deadlines for filing motions. Harrold's health not only caused severe delay in the first trial, it stalled the preparation of motions for the second. There was no assurance she would follow her physician's advice—she had failed once before, apparently—and still less that she would not suffer similar problems again anyway, further disrupting the commencement of trial or its completion. The judge had to steer this case to port somehow. ▮▮▮▮▮ With all due respect to defendant's preference, Harrold's recusal appears to us to have been necessary to serve that purpose.[13]

Writ denied. The alternative writ is discharged.

Sills, P. J., and Moore, J., concurred.

A petition for a rehearing was denied October 15, 1991, and petitioner's application for review by the Supreme Court was denied December 12, 1991. Kennard, J., was of the opinion that the application should be granted.

---

[13]The writ petition raises two additional issues that do not require extended discussion. We are told the court erred in not holding an evidentiary hearing. But the judge received relevant evidence from Harrold and her doctor. She had seen the disruption of the court's processes caused by the attorney's ill health firsthand. The court was aware that Maniscalco and Harrold wished to continue together and the attorney had an intimate knowledge of the case. Harrold made no offer of proof suggesting she had anything else to overcome the unfavorable facts supporting her recusal.

Relying on our *Vangsness* opinion, among others (see fn. 5), Harrold assails the district attorney's instigation of her removal and participation in the process. But it was understandable in this unique instance. How else was the district attorney to exercise his new right to a speedy trial? Who else had more interest in seeing the prosecution through?

Harrold's claim that the prosecutor's actions were vindictive based on the hung jury achieved by the defense team and complaint that she was not allowed to prove that below are baseless. An allegation of vindictiveness was made in the defense points and authorities in the superior court; but it was not supported in Harrold's sealed declaration or by anything else, not even an offer of proof. (See Evid. Code, § 354.) The record shows the prosecutor suffered through many more months of defense delays after the first trial ended before finally saying, "Enough." It is evident that the district attorney merely wants to get this case to trial and complete it before the participants die of old age. Indeed, one prosecution witness now has a life-threatening disease. And, as we have noted twice before, the codefendant has remained incarcerated for seven years without even his first trial.