(Slip Opinion)      OCTOBER TERM, 2008      1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## VERMONT *v.* BRILLON

### CERTIORARI TO THE SUPREME COURT OF VERMONT

No. 08–88.   Argued January 13, 2009—Decided March 9, 2009

In July 2001, respondent Brillon was arrested on felony domestic assault and habitual offender charges.  Nearly three years later, in June 2004, he was tried by jury, found guilty as charged, and sentenced to 12 to 20 years in prison.  During the time between his arrest and his trial, at least six different attorneys were appointed to represent him.  Brillon "fired" his first attorney, who served from July 2001 to February 2002.  His third lawyer, who served from March 2002 until June 2002, was allowed to withdraw when he reported that Brillon had threatened his life.  His fourth lawyer served from June 2002 until November 2002, when the trial court released him from the case.  His fifth lawyer, assigned two months later, withdrew in April 2003.  Four months thereafter, his sixth lawyer was assigned, and she took the case to trial in June 2004.

   The trial court denied Brillon's motion to dismiss for want of a speedy trial.  The Vermont Supreme Court, however, reversed, holding that Brillon's conviction must be vacated, and the charges against him dismissed, because the State did not accord him the speedy trial required by the Sixth Amendment.  Citing the balancing test this Court stated in *Barker* v. *Wingo*, 407 U. S. 514, the Vermont Supreme Court concluded that all four factors described in *Barker*— "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant," *id.,* at 530—weighed against the State.  Weighing heavily in Brillon's favor, the Vermont court said, the three-year delay in bringing him to trial was "extreme."  In assessing the reasons for that delay, the court separately considered the period of each counsel's representation.  It acknowledged that the first year, when Brillon was represented by his first and third lawyers, should not count against the State.  But the court counted much of the remaining two years against the State.  Delays

in that period, the court determined, were caused, for the most part, by the failure or unwillingness of several of the assigned counsel, over an inordinate period of time, to move the case forward. As for the third and fourth *Barker* v. *Wingo* factors, the court found that Brillon repeatedly and adamantly demanded a trial and that his lengthy pretrial incarceration was prejudicial.

*Held:* The Vermont Supreme Court erred in ranking assigned counsel essentially as state actors in the criminal justice system. Assigned counsel, just as retained counsel, act on behalf of their clients, and delays sought by counsel are ordinarily attributable to the defendants they represent. Pp. 6–11.

    (a) Primarily at issue here is the reason for the delay in Brillon's trial. In applying *Barker*, the Court has asked "whether the government or the criminal defendant is more to blame for th[e] delay." *Doggett* v. *United States*, 505 U. S. 647, 651. Delay "to hamper the defense" weighs heavily against the prosecution, *Barker*, 407 U. S., at 531, while delay caused by the defense weighs against the defendant, *id.,* at 529. Because "the attorney is the [defendant's] agent when acting, or failing to act, in furtherance of the litigation," delay caused by the defendant's counsel is charged against the defendant. *Coleman* v. *Thompson*, 501 U. S. 722, 753. The same principle applies whether counsel is privately retained or publicly assigned, for " '[o]nce a lawyer has undertaken the representation of an accused, the duties and obligations are the same whether the lawyer is privately retained, appointed, or serving in a legal aid or defender program.' " *Polk County* v. *Dodson*, 454 U. S. 312, 318. Unlike a prosecutor or the court, assigned counsel ordinarily is not considered a state actor. Pp. 6–8.

    (b) Although the balance arrived at in close cases ordinarily would not prompt this Court's review, the Vermont Supreme Court made a fundamental error in its application of *Barker* that calls for this Court's correction. The court erred in attributing to the State delays caused by the failure of several assigned counsel to move Brillon's case forward and in failing adequately to take into account the role of Brillon's disruptive behavior in the overall balance. Pp. 8–11.

    (1) An assigned counsel's failure to move the case forward does not warrant attribution of delay to the State. Most of the delay the Vermont court attributed to the State must therefore be attributed to Brillon as delays caused by his counsel, each of whom requested time extensions. Their inability or unwillingness to move the case forward may not be attributed to the State simply because they are assigned counsel. A contrary conclusion could encourage appointed counsel to delay proceedings by seeking unreasonable continuances, hoping thereby to obtain a dismissal of the indictment on speedy-trial

Syllabus

grounds.  Trial courts might well respond by viewing continuance requests made by appointed counsel with skepticism, concerned that even an apparently genuine need for more time is in reality a delay tactic.  Yet the same considerations would not attend a privately retained counsel's requests for time extensions.  There is no justification for treating defendants' speedy-trial claims differently based on whether their counsel is privately retained or publicly assigned.  Pp. 9–10.

    (2) The Vermont Supreme Court further erred by treating the period of each counsel's representation discretely.  The court failed appropriately to take into account Brillon's role during the first year of delay.  Brillon sought to dismiss his first attorney on the eve of trial.  His strident, aggressive behavior with regard to his third attorney further impeded prompt trial and likely made it more difficult for the Defender General's office to find replacement counsel.  Absent Brillon's efforts to force the withdrawal of his first and third attorneys, no speedy-trial issue would have arisen.  Pp. 10–11.

    (c) The general rule attributing to the defendant delay caused by assigned counsel is not absolute.  Delay resulting from a systemic breakdown in the public defender system could be charged to the State.  Cf. *Polk County*, 454 U. S., at 324–325.  But the Vermont Supreme Court made no determination, and nothing in the record suggests, that institutional problems caused any part of the delay in Brillon's case.  P. 11.

955 A. 2d 1108, reversed and remanded.

GINSBURG, J,. delivered the opinion of the Court, in which ROBERTS, C. J., and SCALIA, KENNEDY, SOUTER, THOMAS, and ALITO, JJ., joined. BREYER, J., filed a dissenting opinion, in which STEVENS, J., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

_____

No. 08–88

_____

## VERMONT, PETITIONER *v.* MICHAEL BRILLON

ON WRIT OF CERTIORARI TO THE SUPREME COURT OF VERMONT

[March 9, 2009]

JUSTICE GINSBURG delivered the opinion of the Court.

This case concerns the Sixth Amendment guarantee that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial." Michael Brillon, defendant below, respondent here, was arrested in July 2001 on felony domestic assault and habitual offender charges. Nearly three years later, in June 2004, he was tried by jury, found guilty as charged, and sentenced to 12 to 20 years in prison. The Vermont Supreme Court vacated Brillon's conviction and held that the charges against him must be dismissed because he had been denied his right to a speedy trial.

During the time between Brillon's arrest and his trial, at least six different attorneys were appointed to represent him. Brillon "fired" the first, who served from July 2001 to February 2002. His third lawyer, who served from March 2002 until June 2002, was allowed to withdraw when he reported that Brillon had threatened his life. The Vermont Supreme Court charged against Brillon the delays associated with those periods, but charged against the State periods in which assigned counsel failed "to move the case forward." 955 A. 2d 1108, 1121, 1122

(2008).

We hold that the Vermont Supreme Court erred in ranking assigned counsel essentially as state actors in the criminal justice system. Assigned counsel, just as retained counsel, act on behalf of their clients, and delays sought by counsel are ordinarily attributable to the defendants they represent. For a total of some six months of the time that elapsed between Brillon's arrest and his trial, Brillon lacked an attorney. The State may be charged with those months if the gaps resulted from the trial court's failure to appoint replacement counsel with dispatch. Similarly, the State may bear responsibility if there is "a breakdown in the public defender system." *Id.,* at 1111. But, as the Vermont Supreme Court acknowledged, *id.,* at 1126, the record does not establish any such institutional breakdown.

I

On July 27, 2001, Michael Brillon was arrested after striking his girlfriend. Three days later he was arraigned in state court in Bennington County, Vermont and charged with felony domestic assault. His alleged status as a habitual offender exposed him to a potential life sentence. The court ordered him held without bail.

Richard Ammons, from the county public defender's office, was assigned on the day of arraignment as Brillon's first counsel.[1] In October, Ammons filed a motion to recuse the trial judge. It was denied the next month and trial was scheduled for February 2002. In mid-January, Ammons moved for a continuance, but the State objected, and the trial court denied the motion.

On February 22, four days before the jury draw, Am-

———————

[1] Vermont's Defender General has "the primary responsibility for providing needy persons with legal services." Vt. Stat. Ann., Tit. 13, §5253(a) (1998). These services may be provided "personally, through public defenders," or through contract attorneys. *Ibid.*

mons again moved for a continuance, citing his heavy workload and the need for further investigation. Ammons acknowledged that any delay would not count (presumably against the State) for speedy-trial purposes. The State opposed the motion,[2] and at the conclusion of a hearing, the trial court denied it. Brillon, participating in the proceedings through interactive television, then announced: "You're fired, Rick." App. 187. Three days later, the trial court—over the State's objection—granted Ammons' motion to withdraw as counsel, citing Brillon's termination of Ammons and Ammons' statement that he could no longer zealously represent Brillon.[3] The trial court warned Brillon that further delay would occur while a new attorney became familiar with the case. The same day, the trial court appointed a second attorney, but he immediately withdrew based on a conflict.

On March 1, 2002, Gerard Altieri was assigned as Brillon's third counsel. On May 20, Brillon filed a motion to dismiss Altieri for, among other reasons, failure to file motions, "[v]irtually no communication whatsoever," and his lack of diligence "because of heavy case load." *Id.,* ¶¶2, 5, at 113–114. At a June 11 hearing, Altieri denied several of Brillon's allegations, noted his disagreement with Brillon's trial strategy,[4] and insisted he had plenty of time

--------

[2]The State expressed its concern that the continuance request was "just part and parcel of an effort by the defense to have the Court not hear this matter." App. 180. Under Vermont procedures, the judge presiding over the trial was scheduled to "rotate" out of the county where Brillon's case was pending in March 2002. See *id.,* ¶6, at 109. Thus, a continuance past March would have caused a different judge to preside over Brillon's trial, despite the denial of his motion to recuse the initial judge. Ammons requested a continuance until April.

[3]Ammons also cited as cause to withdraw, "certain irreconcilable differences in preferred approach between Mr. Brillon and counsel as to trial strategy, as well as other legitimate legal decisions." *Id.,* ¶2, at 104.

[4]Specifically, Altieri appeared reluctant to follow Brillon's tactic that

to prepare. The State opposed Brillon's motion as well.
Near the end of the hearing, however, Altieri moved to
withdraw on the ground that Brillon had threatened his
life during a break in the proceedings. The trial court
granted Brillon's motion to dismiss Altieri, but warned
Brillon that "this is somewhat of a dubious victory in your
case because it simply prolongs the time that you will
remain in jail until we can bring this matter to trial." *Id.,*
at 226.

That same day, the trial court appointed Paul
Donaldson as Brillon's fourth counsel. At an August 5
status conference, Donaldson requested additional time to
conduct discovery in light of his caseload. A few weeks
later, Brillon sent a letter to the court complaining about
Donaldson's unresponsiveness and lack of competence.
Two months later, Brillon filed a motion to dismiss
Donaldson—similar to his motion to dismiss Altieri—for
failure to file motions and "virtually no communication
whatsoever." *Id.,* ¶¶1, 2, at 115–116. At a November 26
hearing, Donaldson reported that his contract with the
Defender General's office had expired in June and that he
had been in discussions to have Brillon's case reassigned.
The trial court released Donaldson from the case
"[w]ithout making any findings regarding the adequacy of
[Donaldson]'s representation." 955 A. 2d, at 1119. Cf.
*post*, at 2.

Brillon's fifth counsel, David Sleigh, was not assigned
until January 15, 2003; Brillon was without counsel dur-
ing the intervening two months. On February 25, Sleigh
sought extensions of various discovery deadlines, noting
that he had been in trial out of town. App. 117. On April
10, however, Sleigh withdrew from the case, based on

———————

he "bring in a lot of people" at trial, "some of them young kids and
relatives . . . in an attempt by Mr. Brillon—this is his theory—I don't
want to use the words trash, [to] impeach [the victim]." *Id.,* at 216–217.

"modifications to [his] firm's contract with the Defender General." *Id.,* at 158.

Brillon was then without counsel for the next four months. On June 20, the Defender General's office notified the court that it had received "funding from the legislature" and would hire a new special felony unit defender for Brillon. *Id.,* at 159. On August 1, Kathleen Moore was appointed as Brillon's sixth counsel. The trial court set November 7 as the deadline for motions, but granted several extensions in accord with the parties' stipulation. On February 23, 2004, Moore filed a motion to dismiss for lack of a speedy trial. The trial court denied the motion on April 19.

The case finally went to trial on June 14, 2004. Brillon was found guilty and sentenced to 12 to 20 years in prison. The trial court denied a post-trial motion to dismiss for want of a speedy trial, concluding that the delay in Brillon's trial was "in large part the result of his own actions" and that Brillon had "failed to demonstrate prejudice as a result of [the] pre-trial delay." App. to Pet. for Cert. 72.

On appeal, the Vermont Supreme Court held 3 to 2 that Brillon's conviction must be vacated and the charges dismissed for violation of his Sixth Amendment right to a speedy trial. Citing the balancing test of *Barker* v. *Wingo*, 407 U. S. 514 (1972), the majority concluded that all four of the factors described in *Barker*—"[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant"—weighed against the State. *Id.,* at 530.

The court first found that the three-year delay in bringing Brillon to trial was "extreme" and weighed heavily in his favor. See 955 A. 2d, at 1116. In assessing the reasons for that delay, the Vermont Supreme Court separately considered the period of each counsel's representation. It acknowledged that the first year, when Brillon was represented by Ammons and Altieri, should not count

against the State. *Id.,* at 1120. But the court counted much of the remaining two years against the State for delays "caused, for the most part, by the failure of several of defendant's assigned counsel, over an inordinate period of time, to move his case forward." *Id.,* at 1122. As for the third and fourth factors, the court found that Brillon "repeatedly and adamantly demanded to be tried," *ibid.*, and that his "lengthy pretrial incarceration" was prejudicial, despite his insubstantial assertions of evidentiary prejudice, *id.,* at 1125.

The dissent strongly disputed the majority's characterization of the periods of delay. It concluded that "the lion's share of delay in this case is attributable to defendant, and not to the state." *Id.,* at 1127. But for Brillon's "repeated maneuvers to dismiss his lawyers and avoid trial through the first eleven months following arraignment," the dissent explained, "the difficulty in finding additional counsel would not have arisen." *Id.,* at 1128.

We granted certiorari, 554 U. S. ___ (2008),[5] and now reverse the judgment of the Vermont Supreme Court.

## II

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial." The speedy-trial right is "amorphous," "slippery," and "necessarily relative." *Barker*, 407 U. S., at 522 (quoting *Beavers* v. *Haubert*, 198 U. S. 77, 87 (1905)). It is "consistent with delays and depend[ent] upon circum-

_____

[5] Vermont's Constitution contains a speedy-trial clause which reads: "[I]n all prosecutions for criminal offenses, a person hath a right to . . . a speedy public trial by an impartial jury . . . ." Vt. Const., Ch. I, Art. 10. Notably, the Vermont Supreme Court made no ruling under the State's own prescription, but instead relied solely on the Federal Constitution. Because it did so, our review authority was properly invoked and exercised. See *Oregon* v. *Hass*, 420 U. S. 714, 719–720 (1975); Ginsburg, Book Review, 92 Harv. L. Rev. 340, 343–344 (1978). But see *post*, at 1–4.

stances." 407 U. S., at 522 (internal quotation marks omitted). In *Barker*, the Court refused to "quantif[y]" the right "into a specified number of days or months" or to hinge the right on a defendant's explicit request for a speedy trial. *Id.,* at 522–525. Rejecting such "inflexible approaches," *Barker* established a "balancing test, in which the conduct of both the prosecution and the defendant are weighed." *Id.,* at 529, 530. "[S]ome of the factors" that courts should weigh include "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Ibid.*

Primarily at issue here is the reason for the delay in Brillon's trial. *Barker* instructs that "different weights should be assigned to different reasons," *id.,* at 531, and in applying *Barker*, we have asked "whether the government or the criminal defendant is more to blame for th[e] delay." *Doggett* v. *United States*, 505 U. S. 647, 651 (1992). Deliberate delay "to hamper the defense" weighs heavily against the prosecution. *Barker*, 407 U. S., at 531. "[M]ore neutral reason[s] such as negligence or overcrowded courts" weigh less heavily "but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Ibid.*

In contrast, delay caused by the defense weighs against the defendant: "[I]f delay is attributable to the defendant, then his waiver may be given effect under standard waiver doctrine." *Id.,* at 529. Cf. *United States* v. *Loud Hawk*, 474 U. S. 302, 316 (1986) (noting that a defendant whose trial was delayed by his interlocutory appeal "normally should not be able . . . to reap the reward of dismissal for failure to receive a speedy trial"). That rule accords with the reality that defendants may have incentives to employ delay as a "defense tactic": delay may "work to the accused's advantage" because "witnesses may become unavailable or their memories may fade" over time. *Barker*,

407 U. S., at 521.

Because "the attorney is the [defendant's] agent when acting, or failing to act, in furtherance of the litigation," delay caused by the defendant's counsel is also charged against the defendant. *Coleman* v. *Thompson*, 501 U. S. 722, 753 (1991).[6]   The same principle applies whether counsel is privately retained or publicly assigned, for "[o]nce a lawyer has undertaken the representation of an accused, the duties and obligations are the same whether the lawyer is privately retained, appointed, or serving in a legal aid or defender program." *Polk County* v. *Dodson*, 454 U. S. 312, 318 (1981) (internal quotation marks omitted).   "Except for the source of payment," the relationship between a defendant and the public defender representing him is "identical to that existing between any other lawyer and client." *Ibid.*   Unlike a prosecutor or the court, assigned counsel ordinarily is not considered a state actor.[7]

## III

*Barker*'s formulation "necessarily compels courts to approach speedy trial cases on an *ad hoc* basis," 407 U. S., at 530, and the balance arrived at in close cases ordinarily would not prompt this Court's review.   But the Vermont Supreme Court made a fundamental error in its application of *Barker* that calls for this Court's correction.   The

_____

[6] Several States' speedy-trial statutes expressly exclude from computation of the time limit continuances and delays caused by the defendant or defense counsel.   See, *e.g.*, Cal. Penal Code Ann. §1381 (West 2000); Ill. Comp. Stat., ch. 725, §5/103–5(f) (2006); N. Y. Crim. Proc. Law Ann. §30.30(4) (West Supp. 2009); Alaska Rule Crim. Proc. 45(d) (1993); Ark. Rule Crim. Proc. 28.3 (2006); Ind. Rule Crim. Proc. 4(A) (2009).   See also Brief for National Governors Association et al. as *Amici Curiae* 17–18, and n. 12.

[7] A public defender may act for the State, however, "when making hiring and firing decisions on behalf of the State," and "while performing certain administrative and possibly investigative functions." *Polk County* v. *Dodson*, 454 U. S. 312, 325 (1981).

Vermont Supreme Court erred in attributing to the State delays caused by "the failure of several assigned counsel . . . to move his case forward," 955 A. 2d, at 1122, and in failing adequately to take into account the role of Brillon's disruptive behavior in the overall balance.

## A

The Vermont Supreme Court's opinion is driven by the notion that delay caused by assigned counsel's "inaction" or failure "to move [the] case forward" is chargeable to the State, not the defendant. *Id.,* at 1111, 1122. In this case, that court concluded, "a significant portion of the delay in bringing defendant to trial must be attributed to the state, even though most of the delay was caused by the inability or unwillingness of assigned counsel to move the case forward." *Id.,* at 1121.

We disagree. An assigned counsel's failure "to move the case forward" does not warrant attribution of delay to the State. Contrary to the Vermont Supreme Court's analysis, assigned counsel generally are not state actors for purposes of a speedy-trial claim. While the Vermont Defender General's office is indeed "part of the criminal justice system," *ibid.*, the individual counsel here acted only on behalf of Brillon, not the State. See *Polk County*, 454 U. S., at 320–322 (rejecting the view that public defenders act under color of state law because they are paid by the State). See also *supra*, at 8.

Most of the delay that the Vermont Supreme Court attributed to the State must therefore be attributed to Brillon as delays caused by his counsel. During those periods, Brillon was represented by Donaldson, Sleigh, and Moore, all of whom requested extensions and continuances.[8] Their "inability or unwillingness . . . to move the

——————

[8]The State conceded before the Vermont Supreme Court that the period of Sleigh's representation—along with a six-month period of no representation—was properly attributed to the State. 955 A. 2d 1108,

case forward," 955 A. 2d, at 1121, may not be attributed to
the State simply because they are assigned counsel.

A contrary conclusion could encourage appointed coun-
sel to delay proceedings by seeking unreasonable continu-
ances, hoping thereby to obtain a dismissal of the indict-
ment on speedy-trial grounds. Trial courts might well
respond by viewing continuance requests made by ap-
pointed counsel with skepticism, concerned that even an
apparently genuine need for more time is in reality a delay
tactic. Yet the same considerations would not attend a
privately retained counsel's requests for time extensions.
We see no justification for treating defendants' speedy-
trial claims differently based on whether their counsel is
privately retained or publicly assigned.

### B

In addition to making assigned counsel's "failure . . . to
move [the] case forward" the touchstone of its speedy-trial
inquiry, the Vermont Supreme Court further erred by
treating the period of each counsel's representation dis-
cretely. The factors identified in *Barker* "have no talis-
manic qualities; courts must still engage in a difficult and
sensitive balancing process." 407 U. S., at 533. Yet the
Vermont Supreme Court failed appropriately to take into
account Brillon's role during the first year of delay in "the
chain of events that started all this." Tr. of Oral Arg. 46.

Brillon sought to dismiss Ammons on the eve of trial.
His strident, aggressive behavior with regard to Altieri,
whom he threatened, further impeded prompt trial and
likely made it more difficult for the Defender General's

_____

1120–1121 (2008). The State sought to avoid its concession at oral
argument before this Court, but in the alternative, noted that the
period of Sleigh's representation "is really inconsequential." Tr. of Oral
Arg. 5–6. We agree that in light of the three-year delay caused mostly
by Brillon, the attribution of Sleigh's three-month representation does
not tip the balance for either side.

office to find replacement counsel. Even after the trial court's warning regarding delay, Brillon sought dismissal of yet another attorney, Donaldson. Just as a State's "deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the [State]," *Barker*, 407 U. S., at 531, so too should a defendant's deliberate attempt to disrupt proceedings be weighted heavily against the defendant. Absent Brillon's deliberate efforts to force the withdrawal of Ammons and Altieri, no speedy-trial issue would have arisen. The effect of these earlier events should have been factored into the court's analysis of subsequent delay.[9]

## C

The general rule attributing to the defendant delay caused by assigned counsel is not absolute. Delay resulting from a systemic "breakdown in the public defender system," 955 A. 2d, at 1111, could be charged to the State. Cf. *Polk County*, 454 U. S., at 324–325. But the Vermont Supreme Court made no determination, and nothing in the record suggests, that institutional problems caused any part of the delay in Brillon's case.

In sum, delays caused by defense counsel are properly attributed to the defendant, even where counsel is assigned. "[A]ny inquiry into a speedy trial claim necessitates a functional analysis of the right in the particular context of the case," *Barker*, 407 U. S., at 522, and the record in this case does not show that Brillon was denied his constitutional right to a speedy trial.

\*    \*    \*

For the reasons stated, the judgment of the Vermont Supreme Court is reversed, and the case is remanded for

---

[9] Brillon lacked counsel for some six months. In light of his own role in the initial periods of delay, however, this six-month period, even if attributed to the State, does not establish a speedy-trial violation.

further proceedings not inconsistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

———————

No. 08–88

———————

## VERMONT, PETITIONER *v.* MICHAEL BRILLON

ON WRIT OF CERTIORARI TO THE SUPREME COURT OF
VERMONT

[March 9, 2009]

JUSTICE BREYER, with whom JUSTICE STEVENS joins,
dissenting.

We granted certiorari in this case to decide whether
delays caused "solely" by a public defender can be "charged
against the State pursuant to the test in *Barker* v. *Wingo*,
407 U. S. 514 (1972)." Pet. for Cert. i, ¶1. The case, in my
view, does not squarely present that question, for the
Vermont Supreme Court, when it found Michael Brillon's
trial unconstitutionally delayed, did not count such delays
against the State. The court's opinion for the most part
makes that fact clear; at worst some passages are ambigu-
ous. Given these circumstances, I would dismiss the writ
of certiorari as improvidently granted.

I

The relevant time period consists of slightly less than
three years, stretching from July 2001, when Brillon was
indicted, until mid-June 2004, when he was convicted and
sentenced. In light of Brillon's improper behavior, see
*ante*, at 3–4, the Vermont Supreme Court did not count
months 1 through 12 (mid-July 2001 through mid-June
2002) against the State. Noting the objection that Brillon
had sought to "intentionally sabotag[e] the criminal pro-
ceedings against him," the Vermont Supreme Court was
explicit that this time period "do[es] not count . . . against
the [S]tate." 955 A. 2d 1108, 1120 (2008).

The Vermont Supreme Court did count months 13 through 17 (mid-June 2002 through November 2002) against the State. It did so under circumstances where (1) Brillon's counsel, Paul Donaldson, revealed that his contract with the defender general's office had expired in June 2002—shortly after (perhaps before!) he took over as Brillon's counsel, App. 232–233, (2) he stated that this case was "basically the beginning of [his] departure from the contract," *ibid.,* and (3) he made no filings, missed several deadlines, did "little or nothing" to "move the case forward," and made only one brief appearance at a status conference in mid-August. 955 A. 2d, at 1121. I believe it fairer to characterize this period, not as a period in which "assigned counsel" failed to move the case forward, *ante*, at 1, but as a period in which Brillon, in practice, *had no assigned counsel*. And, given that the State conceded its responsibility for delays caused by another defender who resigned for "contractual reasons," see *infra* at 3, it is hardly unreasonable that the Vermont Supreme Court counted this period of delay against the State.

The Vermont Supreme Court also counted months 18 through 25 (the end of November 2002 through July 2003) against the State. It did so because the State conceded in its brief that this period of delay "*cannot be attributed to the defendant.*" App. 78 (emphasis added). This concession is not surprising in light of the fact that during much of this period, Brillon was represented by David Sleigh, a contract attorney, who during the course of his representation filed nothing on Brillon's behalf except a single motion seeking to extend discovery. The record reflects no other actions by Sleigh other than a letter sent to Brillon informing him that "[a]s a result of modifications to our firm's contract with the Defender General, we will not be representing you in your pending case." *Id.*, at 158. Brillon was left without counsel for a period of nearly six months. The State explained in conceding its responsibil-

ity for this delay that Sleigh had been forced to withdraw "for contractual reasons," and that the defender general's office had been unable to replace him "for funding reasons." *Id.*, at 78.

Finally, the Vermont Supreme Court counted against the State the last 11 months—from August 2003 to mid-June 2004. But it is impossible to conclude from the opinion whether it did so because it held the State responsible for the defender's failure to "move the case forward," or for other reasons having nothing to do with counsel, namely the judge's unavailability, see *id.*, at 138, or the fact that "the [case] files were incomplete" and "additional documents were needed from the State," 955 A. 2d, at 1120–1121. Treating the opinion as charging the State on the basis of the defender's conduct is made more difficult by the fact that Brillon did not argue below that Kathleen Moore, his defender during this period, caused any delays. Appellant's Reply Brief in No. 2005–167 (Vt.), 2007 WL 990004, *7.

## II

In sum, I can find no convincing reason to believe the Vermont Supreme Court made the error of constitutional law that the majority attributes to it. Rather than read ambiguities in its opinion against it, thereby assuming the presence of the error the Court finds, I would dismiss the writ as improvidently granted. As a majority nonetheless wishes to decide the case, I would note that the Vermont Supreme Court has considerable authority to supervise the appointment of public defenders. See Vt. Stat. Ann., Tit. 13, §§5204, 5272 (1998); see also Vt. Rule Crim. Proc. 44 (2003). It consequently warrants leeway when it decides whether a particular failing is properly attributed to assigned counsel or instead to the failure of the defender general's office properly to assign counsel. *Ante*, at 11. I do not believe the Vermont Supreme Court exceeded that

leeway here. And I would affirm its decision.

With respect, I dissent.