**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| THOMAS FRANK MANISCALCO, | No. 12-55100 |
| Petitioner - Appellant, | D.C. No. 8:03-cv-01363-DDP-FMO |
| v. | |
| A. M. GONZALES, | ORDER and MEMORANDUM* |
| Respondent - Appellee. | |

Appeal from the United States District Court
for the Central District of California
Dean D. Pregerson, District Judge, Presiding

Argued and Submitted November 21, 2014**
Pasadena, California

---

\*      This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

\*\*      We have considered the petition for rehearing. The memorandum disposition filed March 30, 2015 is withdrawn.  This memorandum disposition is substituted for the disposition filed March 30, 2015.  The petition for rehearing and petition for rehearing en banc from that disposition is denied as moot.  Subsequent petitions for rehearing and petitions for rehearing en banc affirming this disposition may be filed.  Federal Rule of Appellate Procedure 40 now controls.

Before: KLEINFELD and PAEZ, Circuit Judges, and CHRISTENSEN, Chief District Judge. ***

As the California Court of Appeal decision sets out in detail, Maniscalco murdered three people. An immunized accomplice testified that the murders arose from the methamphetamine dealings of a motorcycle gang. The facts and the witnesses were bizarre, contradictory, and confusing. The most troublesome issues, at this state of the case, are the extraordinary delays in the proceedings.

This is an appeal of a denial of a federal habeas corpus petition under 28 U.S.C. § 2254, after final judgment affirming the convictions in the state court. The limitations of our authority under § 2254 control the outcome. Unfortunately, the issues are obscured by the length of Maniscalco's submissions, a 141 page brief shortened on our order to 117 pages but still more than twice the number of words permitted by the rules, and ten volumes (2,033 pages) of excerpts of record compounded by 179 volumes, 14 boxes, of district court record. The failure of Maniscalco to state his case concisely increases the risk that we may miss something important and consequently err, but we have done our best to wade

---

*** The Honorable Dana L. Christensen, Chief District Judge for the U.S. District Court for the District of Montana, sitting by designation.

through all this material. We decide this case by memorandum disposition, which pursuant to the general orders "is designed only to provide the parties and the district court with a concise explanation of this Court's decision." G.O. 4.3. The district court did so more extensively, in its thorough and careful 95 page report and recommendation by the Magistrate Judge, adopted by the District Judge, with which we agree. Maniscalco appears to raise four issues: (1) preindictment delay; (2) post-indictment delay; (3) exclusion of impeachment evidence regarding the immunized witness; and (4) cumulative effect of these and other claimed errors.

Maniscalco's Due Process argument based on preindictment delay arises from the four year delay between the three 1980 murders and the 1984 indictment. Maniscalco was a suspect for a substantial part of this four year period, but the police and prosecutors did not believe they had enough evidence to convict him until his arrest in 1984. To obtain a reversal for preindictment delay, Maniscalco must bear the "heavy" and "rarely met" burden of demonstrating actual, and not speculative, prejudice. United States v. Barken, 412 F.3d 1131, 1134 (9th Cir. 2005). He must also show that, even if there was prejudice, the length of the delay balanced against the reasons for it "offends those fundamental conceptions of justice which lie at the base of our civil and political institutions." Id. (internal

quotation marks and citations omitted). The writ cannot be granted, under 28 U.S.C. § 2254(d), unless the state court decision was contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

The most relevant Supreme Court decision is United States v. Lovasco, 431 U.S. 783 (1977). Lovasco holds that proof of actual prejudice is necessary but not sufficient for a due process claim based on preindictment delay, and that investigative delay does not deprive a defendant of due process. Fundamental unfairness is a sine qua non for relief.

The California Court of Appeal assumed, for purposes of analysis, actual prejudice, but concluded that substantial evidence supported the Superior Court finding that the delay was neither intentional nor negligent, and the justification outweighed the prejudice to Maniscalco. The factual determination was a reasonable determination on the record, in light of the difficulty of penetrating the fog of reluctant and unreliable witnesses to develop evidence that could prove Maniscalco's guilt beyond a reasonable doubt.

4

Maniscalco argues that his Sixth Amendment right to a speedy trial was denied him by the delay between indictment and trial. This issue is more difficult than his preindictment delay claim, because the delay was extraordinary. Maniscalco had a more than ten month long jury trial, due to the poor health of his counsel, which caused "weeks to be lost." Maniscalco v. Superior Court (Maniscalco I), 234 Cal. App. 3d 846, 849 (1991). That trial got underway nearly six years after his indictment. The jury hung. He went to trial again three years later, this time in a four month long jury trial. He was finally convicted ten years after his initial indictment.

The line of Supreme Court decisions most on point begins with the four factor balancing test of Barker v. Wingo, requiring consideration of the length of the delay, the reason for the delay, the defendant's assertion of his right to a speedy trial, and prejudice to the defendant on account of the delay. Barker v. Wingo, 407 U.S. 514, 530 (1972). None of the factors are necessary or sufficient to establish the presence or absence of a Sixth Amendment violation. Id. at 533. They must be considered together with such other circumstances as may be relevant, in a "difficult and sensitive balancing process." Id. Inexcusable government oversights delaying trial six years not extenuated by the defendant's acquiescence

5

entitled a defendant to relief in <u>Doggett v. United States</u>, but that was a federal prosecution, not a habeas proceeding under § 2254. <u>Doggett v. United States</u>, 505 U.S. 647, 651 (1992). <u>Vermont v. Brillon</u> holds that delay sought by defense counsel are ordinarily attributable to the defendants they represent. <u>Vermont v. Brillon</u>, 556 U.S. 81, 85 (2009). The Court in <u>Vermont</u> characterizes the Sixth Amendment right to a speedy trial as "'amorphous,' 'slippery,' and 'necessarily relative.'" <u>Id.</u> at 89 (quoting <u>Barker</u>, 407 U.S. at 522). The Court did, however, clearly hold that "delay caused by the defense weighs against the defendant," and "if the delay is attributable to the defendant, then his waiver may be given effect under the standard waiver doctrine." <u>Id.</u> at 90.

Though the delay in this case is extraordinary, we are unable to conclude that, under the deferential standard of review we must apply, <u>see</u> <u>Harrington v. Richter</u>, 562 U.S. 86, 102–03 (2011), that the delay was contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court. The California Court of Appeal assumed prejudice for purposes of analysis, but found, not unreasonably on the record before it, that "the postindictment delay was almost all a product of defense tactics."

As with the mountain of paper Maniscalco's attorneys filed with us, so did they burden and delay the state proceedings with innumerable obstacles to reaching a judgement. Maniscalco's "one refusal to waive time," the California Court of Appeal found, was March 3, 1993, after his first trial and eight months before his second. Up to that point, the delays were caused by Maniscalco's attorneys who, among other means of imposing delay, "could not or would not honor deadlines for filing motions." Maniscalco I, 234 Cal. App. 3d at 852.

Maniscalco's petition before the California Court of Appeal over the reliability of the grand jury transcript caused more than a year of delay, his attempt to have the assigned judge recused caused another year delay, and his change of counsel and disputes regarding it caused eight months in delay, and all this delay was supplemented by innumerable additional delays generated by his own flood of motions and petitions. The time it took the appellate courts to decide Maniscalco's numerous filings is not delay that supports a speedy trial violation. See United States v. Loud Hawk, 474 U.S. 302, 316 (1986). The California Court of Appeal in Maniscalco I found Maniscalco to be the primary cause of the delays, particularly in regards to the length of the first trial:

The case took forever to get before a jury, and the duration of the trial itself bordered on the obscene.  A codefendant ha[d] luffed in the system for some *seven* years awaiting the conclusion of Maniscalco's prosecution.  The defense team could not or would not honor deadlines for filing motions.  [Maniscalco's counsel's] health not only caused severe delay in the first trial, it stalled the preparation of motions for the second.  There was no assurance she would follow her physician's advice—she had failed once before, apparently—and still less that she would not suffer similar problems again anyway, further disrupting the commencement of trial or its completion.  The judge had to steer this case to port somehow.

Maniscalco I, 234 Cal. App. 3d at 852.

Maniscalco was a lawyer himself, as well as being represented, so there is no reason to doubt that he understood what he was doing by his delaying tactics, and, under Vermont, his lawyers' tactics would be attributable to him regardless. Maniscalco could, and does, present many arguments to the contrary, but the California Court of Appeal's determination of what happened and why is not unreasonable based on the record they had.  And considering the "slippery" and "amorphous" balancing test the Supreme Court requires us to apply along with with the considerable deference we must accord to state court determinations under § 2254, we cannot conclude that the California Court of Appeal ruling was contrary to or an unreasonable application of Barker, Doggett, and Vermont.

8

Fairminded jurists could at most disagree on whether the California Court of Appeal misapplied these authorities, and under Harrington v. Richter, that requires federal courts to deny the petition. This is not a direct appeal from a federal judgment, so it does not matter whether we ourselves might disagree with the California Court of Appeal decision, so long as fairminded jurists could agree with it.

Maniscalco also argues that the exclusion of some of the impeachment evidence he might have used violated his right to present a complete defense under Chambers v. Mississippi, 410 U.S. 284 (1973). The California Court of Appeal decision was not contrary to the Chambers line of authority or an unreasonable determination of fact on the record before it. Maniscalco got plenty of evidence in to prove just how bad the government's witnesses were, and what little the trial court kept out in his very lengthy trial would have made no difference. Nor did the California Court of Appeal unreasonably apply Supreme Court precedent in rejecting Maniscalco's other evidentiary claims. Maniscalco's cumulative error argument addresses minor evidentiary matters, and the cumulative effect of any error was not so great as to violate due process. See Hayes v. Ayers, 632 F.3d 500, 524 (9th Cir. 2011) ("Because we conclude that no error of constitutional

9

magnitude occurred, no cumulative prejudice is possible."); <u>see</u> <u>also</u> <u>Rupe v.</u>

<u>Wood</u>, 93 F.3d 1434, 1445 (9th Cir. 1996).


**AFFIRMED.**