Filed 6/15/26  P. v. Scurlock CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>JOHN DAVID SCURLOCK,<br><br>  Defendant and Appellant. | 2d Crim. No. B344233<br>(Super. Ct. No. 2011035383)<br>(Ventura County) |

John David Scurlock appeals after the trial court found him to be a sexually violent predator (SVP) within the meaning of Welfare and Institutions Code section 6600.  Appellant contends we should reverse because the trial court erroneously denied his speedy trial motion.  We will affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In 1988 and 2005, appellant was convicted of assault with intent to commit rape.  Both offenses involved appellant victimizing women who were jogging near the beach.  The convictions qualified as sexually violent offenses under Welfare

and Institutions Code section 6600, subdivision (b).  On July 8, 2008, the District Attorney filed a petition to commit appellant as an SVP.

In August 2009, the trial court found probable cause for trial.  Appellant spent approximately 21 months in jail before transferring to Coalinga State Hospital.  Appellant wanted to transfer to obtain better conditions.  He had been physically attacked while in jail.

In August 2011, appellant received another probable cause hearing in light of *In re Ronje* (2009) 179 Cal.App.4th 509 (*Ronje*).[1]  The court again found probable cause.

After this second probable cause hearing, appellant and his attorney, Benjamin Maserang, were not attempting to set a trial date.  Appellant was in sex offender treatment, which both he and Maserang viewed as potentially helpful to his case.  Between 2010 and 2013, appellant received treatment for various medical and dental issues.  The treatment he received would not have been available at the local jail.  According to Maserang, appellant was not interested in setting an immediate trial date between 2012 and 2014.

Appellant wanted Maserang to file a motion pursuant to *People v. Superior Court (Ghilotti)* (2002) 27 Cal.4th 888

---

[1] In *Ronje*, the Court of Appeal concluded SVPs who had been evaluated under a protocol which had been invalidated were entitled to new evaluations and a new probable cause hearing based upon those new evaluations.  (*Ronje, supra*, 179 Cal.App.4th at p. 521, disapproved in part by *Reilly v. Superior Court* (2013) 57 Cal.4th 641, 655.)

(*Ghilotti*).[2]  Maserang felt the motion would be more appropriate as a pretrial motion rather than a standalone motion.  Appellant did not ask Maserang to immediately go to trial in order to litigate the *Ghilotti* motion.

In March 2015, appellant sent a letter to the appointed public defender complaining of difficulties with reaching Maserang.  Maserang called appellant and spoke with him about obtaining updated evaluations.

Around May 2015, Maserang received reports, including from Dr. Eric Simon.  Maserang was concerned because Dr. Simon had recorded his interview with appellant.  Maserang believed a jury would look unfavorably upon hearing appellant describe the offenses.  Maserang thought the matter could be addressed by waiting for the evaluation to become stale, that appellant was "on board" with this plan, and that they were "on the same page" that there would not be a trial until they received new evaluations in 2016.  But in 2016 and again in 2017, appellant refused to speak with Dr. Simon, who then had to rely upon appellant's 2015 statements for his 2016 and 2017 evaluations.  Based upon Maserang's communication with appellant, it was not his understanding that appellant wanted to go to trial without a more favorable evaluation.

In June 2017, appellant sent Maserang a letter claiming he had not heard from Maserang in over two years.  According to Maserang, this claim was not accurate, but he and appellant had difficulty reaching each other in 2017.  In September 2017,

---

[2] In *Ghilotti*, the Supreme Court held that an SVP evaluator's recommendations are subject to judicial review for "material legal error."  (*Ghilotti, supra*, 27 Cal.4th at p. 913.)

3

Maserang sent appellant a letter updating him on various aspects of the case.

In March 2018, appellant sent a letter to the chief public defender. Appellant claimed he had not had contact with Maserang in three years. Appellant asked the office to reassign his case to another attorney.

In November 2018, appellant sent another letter to the chief public defender. Appellant requested the *Ghilotti* motion be filed. Appellant quoted from *People v. Superior Court (Vasquez)* (2018) 27 Cal.App.5th 36 (*Vasquez*): "'Enough is enough.'" The *Vasquez* court concluded the trial court did not err in finding a 17-year delay violated the due process right to a timely trial. (*Id.* at p. 41, disapproved in part in *Camacho v. Superior Court* (2023) 15 Cal.5th 354, 392, fn. 8 (*Camacho*).) Appellant's letter continued: "I would like this motion filed and my case move forward. Nine years, no progress is too long."

In January 2019, Maserang requested a *Marsden*[3] hearing on appellant's behalf. Appellant complained of inadequate communication with Maserang. The court denied the motion. Maserang did not believe appellant was urgently seeking a trial date and instead preferred "to get rid of the case without going through an SVP trial." Appellant was always aware that there was "no guarantee that it [the trial] would be a favorable outcome for him." In March 2019, appellant told Maserang in a letter that he did not want to go to trial based on the belief that he was entitled to dismissal under *Vasquez*.

In January 2020, the public defender declared a conflict and was relieved. In July 2020, appellant's new counsel filed a motion to dismiss based on appellant's constitutional right to due

---

[3] *People v. Marsden* (1970) 2 Cal.3d 118.

process and a speedy trial. Both Maserang and appellant testified at the July 2022 hearing. The court denied the motion.

At the conclusion of a court trial in February 2025, the court found beyond a reasonable doubt that appellant was an SVP.

## DISCUSSION

"[I]ndividuals facing commitment under the SVP Act have a due process right to a timely trial." (*Camacho, supra*, 15 Cal.5th at p. 379.) To determine whether this right has been violated, we consider the factors articulated in *Barker v. Wingo* (1972) 407 U.S. 514, 530-532 [33 L.Ed.2d 101] (*Barker*): (1) the length of the pretrial delay; (2) the reason for the delay; (3) the defendant's assertion of the right; and (4) the prejudice that the delay caused the defendant. (*People v. Carter* (2024) 15 Cal.5th 1092, 1100.) Appellant fails to establish a due process violation under any standard of review. (*Camacho*, at p. 383.)

As to the first *Barker* factor, the length of the pretrial delay "operates as a threshold hurdle; '[u]ntil there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance.'" (*Camacho, supra*, 15 Cal.5th at p. 383.) "If the accused makes this showing, the court must then consider . . . the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." (*Doggett v. United States* (1992) 505 U.S. 647, 652 [120 L.Ed.2d 520].)

Here, the period from the petition's filing until trial exceeded 16 years. Measuring from filing until appellant wrote the letter invoking *Vasquez* and stating, "'Enough is enough,'" the delay was over 10 years. As the Attorney General acknowledges, a delay of over 10 years is significant and weighs in appellant's

5

favor. (See *Camacho*, *supra*, 15 Cal.5th at p. 383 [eight-year delay deemed "'significant'"].)

The second *Barker* factor—the reasons for the delay—is the "'flag all litigants seek to capture' [citation] because the permissibility of pretrial delay depends to a great extent on who bears responsibility for it and why." (*Camacho*, *supra*, 15 Cal.5th at pp. 383-384.)

Appellant bears primary responsibility for the delay in this case. Some of the delay between 2009 and 2011 can be traced to the second probable cause hearing after *Ronje*. Appellant is not responsible for the delay *Ronje* caused. Between 2010 and 2013, however, appellant received medical and dental treatment at the state hospital, to which he had requested transfer. Appellant could not have received the same treatment in jail, where he would be housed pending an imminent trial. According to Maserang, appellant was not interested in setting an immediate trial date between 2012 and 2014.

When Maserang arranged for new evaluations in 2015, appellant gave the problematic recorded interview with Dr. Simon. Appellant was "on board" with Maserang's strategy to let the evaluation become stale. But appellant's refusal to speak with Dr. Simon in either 2016 or 2017 caused the problem to persist.

Generally, delays sought by counsel are attributed to the client, not the state. (*Vermont v. Brillon* (2009) 556 U.S. 81, 90-91 [173 L.Ed.2d 231].) Appellant offers no reason to depart from this rule. His case does not involve, for example, a systematic breakdown at the public defender's office. (See *id*. at p. 94.) The second *Barker* factor cuts against appellant.

Regarding the third *Barker* factor, assertion of the right, the "'issue is not simply the number of times the accused acquiesced or objected; rather, the focus is on the surrounding circumstances, such as the timeliness, persistence, and sincerity of the objections, the reasons for the acquiescence, whether the accused was represented by counsel, [and] the accused's pretrial conduct . . . . The totality of the accused's responses to the delay is indicative of whether he or she actually wanted a speedy trial.'" (*People v. Williams* (2013) 58 Cal.4th 197, 238.)

Appellant did not clearly indicate he wanted an imminent trial until the 2018 *Vasquez* letter. During that ten-year period, he communicated other wishes to Maserang. For example, appellant requested plea forms from his criminal conviction and wanted Maserang to file a *Ghilotti* motion. But appellant did not demand a trial for over a decade. Given his belated assertion of the speedy trial right, the third factor weighs against appellant.

As for the final factor of prejudice, *Barker* identified three functions of the speedy trial right: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." (*Barker*, *supra*, 407 U.S. at p. 532.) No presumption of prejudice applies in the SVP context. (*Camacho*, *supra*, 15 Cal.5th at p. 392.)

Here, the delay did not significantly impair appellant's defense. At the speedy trial hearing before the trial court, appellant testified that a family friend, his son's grandmother, and a brother-in-law had died during the pendency of his case. Although appellant might have called these individuals as character witnesses at trial, they had passed away by 2014—years before appellant asserted his speedy trial right. Moreover,

while appellant experienced an oppressive restriction on liberty that could cause anxiety and concern, he also availed himself of treatment—both physical and mental—while at the state hospital.  To the extent prejudice exists in this case, the delay did not "undermin[e] the fairness of the proceedings."  (*Camacho*, *supra*, 15 Cal.5th at p. 393.)

Balancing the four *Barker* factors, appellant has not shown a due process violation.  Only the length of the delay "strongly supports" his claim.  (*Camacho*, *supra*, 15 Cal.5th at p. 394.)  Appellant bears primary responsibility for the delay and did not demand trial before 2018.  Nor did significant prejudice occur.  The pretrial delay did not violate appellant's rights.

DISPOSITION

The judgment is affirmed.

<u>NOT CERTIFIED FOR PUBLICATION.</u>

CODY, J.

We concur:

YEGAN, Acting P. J.

BALTODANO, J.

8

Catherine Voelker, Judge
Anthony Sabo, Judge
Superior Court County of Ventura

_____

Gerald J. Miller, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Zee Rodriguez, Supervising Deputy Attorney General, and Lauren N. Guber, Deputy Attorney General.