# State of Vermont v. Helen Crepeault

[704 A.2d 778]

No. 96-523

Present: **Dooley, Morse, Johnson and Skoglund, JJ., and Gibson, J. (Ret.), Specially Assigned**

Opinion Filed October 31, 1997

210

*Jan R. Paul,* Essex County State's Attorney, St. Johnsbury, for Plaintiff-Appellee.

*Charles S. Martin* of *Martin & Associates,* Barre, for Defendant-Appellant.

**Morse, J.** Defendant Helen Crepeault appeals her conviction by jury of sexually assaulting one of her sons when he was under the age of ten. 13 V.S.A. § 3253(a)(8). She contends her conviction should be reversed for two reasons: (1) her motion for judgment of acquittal was mistakenly denied, and (2) the prosecution failed to disclose a conflict of interest. We reverse.

This case began when defendant's son, J.C., revealed that defendant had sexually assaulted him on a regular basis starting when he was four years old and continuing until he was removed from defendant's home at the age of eleven and placed in the custody of the Department of Social and Rehabilitation Services (SRS). He was fifteen at the time of trial. J.C. testified that defendant had repeatedly forced him to put his penis in her vagina, to lick her vagina, and to submit to her sucking on his penis. According to the State, it was J.C.'s learning of defendant's pregnancy with her eighth child, and his concerns for the safety of the baby, that induced him to come forward. J.C.'s older brother, P.C., like his other siblings, had also been removed from defendant's home and placed in SRS custody. Before that time, however, he stated that he had witnessed defendant and J.C. repeatedly engaged in sexual intercourse and oral sex when J.C. was eight or nine years old. Defendant testified on her own behalf, denying that she had ever sexually abused or threatened any of her children.

The information charged defendant with four counts of aggravated sexual assault. The first three counts alleged that defendant had committed certain specific sex acts with a minor under the age of ten, contrary to 13 V.S.A. § 3253(a)(8), and further alleged that the victim had been subjected to repeated nonconsensual acts as part of a common scheme and plan, in violation of 13 V.S.A. § 3253(a)(9). The underlying sexual act alleged in the first count consisted of "forcing [the victim] to put his penis in her vagina"; in the second count, of "placing [defendant's] mouth on [the victim's] penis"; and in the third count, of "forcing [the victim] to put his tongue in her vagina." The fourth count, unlike the first three, did not allege a specific sexual act, but rather charged defendant with having generally "committed a sexual act" upon a victim under the age of ten, and further alleged that defendant had threatened to cause imminent serious bodily injury to the victim, contrary to 13 V.S.A. § 3253(a)(6).

The theory underlying the information was apparently to convict defendant of aggravated sexual assault for having committed the three specific sexual acts alleged, with separate enhancements based upon the victim's age, the defendant's common scheme and plan, and the threat to cause imminent serious bodily injury. Each of the first three counts contained the age and common-scheme enhancements. The fourth count was apparently included for the purpose of adding the serious bodily injury enhancement, and included a generic charge of aggravated sexual assault to substitute for the specific sexual acts alleged in the first three counts.

Special verdicts submitted to the jury attempted to track the information. Each count was subdivided into two parts — "A" and "B" — and a space for the jury to check "Guilty" or "Not Guilty" followed each subpart. Part A of the first three counts alleged the specific sexual acts as set forth in the information, while Part B set forth the aggravating factor of repeated acts pursuant to a common scheme and plan. Part A of the fourth count contained the general aggravated sexual assault allegation, while part B alleged the aggravating factor of serious bodily injury. Thus the jury was essentially asked to make eight separate determinations of guilt or innocence. Defendant specifically declined any lesser-included offense instructions. The jury returned not guilty verdicts on parts A and B of count 1 (sexual intercourse), count 2 (fellatio), and count 3 (cunnilingus), but guilty as to part A of count 4 (general sexual assault upon a victim under ten) and not guilty of Part B (threat to cause serious bodily injury). Following the verdict, defendant moved for judgment of acquittal,

arguing that the not guilty verdicts on counts one through three necessarily acquitted her of count four, which was premised upon the specific sexual acts set forth in the earlier counts. The trial court denied the motion. Defendant contends on appeal that this was error. She also asserts, based upon newly discovered evidence, that the judgment must be reversed because of the prosecutor's failure to disclose a conflict of interest which tainted the proceedings.

## I.

We turn first to defendant's contention that the court erred in denying her post-verdict motion for judgment of acquittal.

Despite the use of the special-verdict form, it is readily apparent that the general charge of aggravated sexual assault in subpart A of count four was not submitted to the jury as a separate and independent offense. It was based, rather, upon the assumption that defendant might be convicted of one or more of the sexual acts alleged in the first three counts, and was included solely to carry the additional serious-bodily-injury enhancement in count four. Although the State contests this interpretation of the verdict form, the record leaves no room for doubt.

As noted, the only sexual acts charged in the information were intercourse, fellatio, and cunnilingus. Defendant was acquitted of all three of these. The affidavit of probable cause in support of the information was consistent with the charging document, describing only the three specific sexual acts set forth in counts one through three.* The State's efforts at trial were similarly focused on establishing through the testimony of the victim and witnesses that defendant had repeatedly compelled J.C. to engage in sexual intercourse and oral sex. In her closing argument to the jury, the prosecutor summarized the State's case by referring specifically, and exclusively, to the three sexual acts alleged in counts one through three:

> [Defendant] forced [the victim] to engage in sexual intercourse. [Defendant] forced [the victim] to engage in oral sex. She forced him to engage in oral sex on her body and she performed oral sex on him. [Defendant] threatened this

---

* Although the affidavit further alleged that defendant had "played with [the victim's] penis until it became erect," this does not fall within the definition of "sexual act" for purposes of the sexual assault statute, and was not charged as such. See 13 V.S.A. § 3251(1).

child that she would kill him or burn down the house unless he did what she wanted him to do.

In her rebuttal argument, the prosecutor repeated the essence of the State's allegations, again referring solely to the specific charges in the first three counts:

> The question remains, how do you explain that [the victim's brother] testified that he saw it all happen. . . . [T]hink about what was happening to [the victim]. He was either being forced to have sexual intercourse with his mother; being forced to perform oral sex or receiving oral sex. . . . And I suggest to you that there is no possible way for these two boys to have gotten together to dream this up.

■ Nowhere in the State's information, affidavit, or argument is there any allegation that defendant committed any prohibited sexual acts within the meaning of 13 V.S.A. § 3251(1) other than those set forth in counts one through three, of which defendant was specifically found to be *not guilty.* Having thus been acquitted of the *only* specifically proscribed acts as to which she was charged and tried, it is axiomatic that defendant cannot have been simultaneously convicted of the same acts under the guise of a general charge. Under these circumstances, the guilty verdict on the general charge of aggravated sexual assault was inconsistent with the prior verdicts and must be reversed. See *State v. Robar*, 157 Vt. 387, 396, 601 A.2d 1376, 1381 (1991) (where trial record is legally insufficient to support guilty verdict, conviction must be reversed and judgment of acquittal entered).

■ We can only assume that the jury's guilty verdict on the generic charge of aggravated sexual assault was in fact a "compromise" verdict, rendered not on the information and evidence actually presented, but on a general feeling that defendant must have been guilty of some wrongdoing. There was certainly substantial evidence that J.C.'s home life was marked by extreme dysfunction, turmoil, and unhappiness, and this may well have led the jury — despite being unconvinced of the truth of the specific allegations of sexual misconduct — to find defendant guilty of something. This was manifestly improper, nevertheless, and cannot be condoned in our system of justice. See *Edwards v. State*, 34 So. 2d 173, 174 (Ala. 1948) (guilty verdict on lesser-included offense unsupported by evidence was "a compromise verdict which the law does not approve or contemplate").

■ The State attempts to uphold the conviction on the theory that count four was actually intended to serve as a "catch-all" count for any sexual act not specifically charged but nevertheless proved at trial. There are three flaws in this reasoning. First, it is belied by the record, which reveals a consistent governmental focus — from charge to verdict — upon the specific sexual acts set forth in counts one through three. Second, it overlooks the fundamental requirement that an information set forth "the essential facts constituting the offense charged." V.R.Cr.P. 7(b). We have adopted a "common sense" approach to the notice requirement, *State v. DeLaBruere*, 154 Vt. 237, 276, 577 A.2d 254, 275-76 (1990), holding that the information may be read in conjunction with the probable-cause affidavit to determine its sufficiency. *State v. Brown*, 153 Vt. 263, 272, 571 A.2d 643, 648 (1989). Here, neither the information nor the affidavit of probable cause gave any indication of the State's intent to rely on any sexual acts other than those specifically charged. And finally, even if we were to overlook the notice deficiency, the evidence does not support the State's theory that the jury convicted defendant of uncharged sexual acts. The only evidence cited by the State consists of isolated statements in J.C.'s testimony to the effect that defendant forced him to "touch her vagina." It is unclear from the context whether the victim actually meant an "intrusion . . . into the genital . . . opening," as the definition of "sexual act" requires. 13 V.S.A. § 3251(1). The act was not charged, and thus neither party was alerted to the necessity to seek clarification. In any event, we are not persuaded that these few remarks, without more, were sufficient to sustain a conviction of aggravated sexual assault.

As there was no valid basis for the verdict of guilt, it follows that the conviction must be reversed, and a judgment of acquittal entered. *Robar*, 157 Vt. at 396, 601 A.2d at 1381.

## II.

Normally our decision to reverse the judgment would render it unnecessary to reach defendant's additional claims. We depart from our usual practice today in order to address an issue of particular concern not only to this Court, but in our view to the fundamental integrity of the bench, the bar, and the administration of justice in Vermont.

The material facts are not in dispute. In 1989, Tom Paul, a deputy state's attorney who assisted in this prosecution, represented defendant in a CHINS (child in need of support) proceeding concerning

C.C., an older sister of the victim here. Tom Paul represented defendant in the CHINS proceeding from the first hearing in December 1989 through the merits and disposition hearing in January 1990. Tom Paul is the spouse and law partner of Jan Paul, the Essex County State's Attorney and the lead prosecutor in this case. The law firm of Jan and Tom Paul had routinely represented parties in juvenile cases pursuant to a contract with the defender general.

The disposition report prepared by SRS in the CHINS matter addressed not only C.C.'s individual problems and behavior, but also discussed family issues affecting defendant's other children. An attached disposition report relating to an earlier SRS intervention in the matter of L.C., another of J.C.'s sisters, provided substantial details concerning the family history, discussed relationships among the parents and children, and referred to allegations of prior sexual assaults against L.C. Defendant was not a suspect in these assaults. According to Tom and Jan Paul, neither of them realized that Tom had previously represented defendant until, in the course of preparing for the criminal trial, Jan came upon Tom's name in defendant's SRS files. She immediately apprised Tom, who claimed that he had no recollection of defendant. Neither of the Pauls disclosed Tom's prior representation of defendant to defense counsel or to the court. Defense counsel did not discover these facts until after trial.

The prosecution's failure to disclose the fact of Tom's previous representation casts serious doubt upon the fairness of these proceedings. Indeed, absent other grounds requiring reversal, we might be compelled to reverse the judgment on this basis alone.

■ The ethical precepts that an attorney scrupulously avoid representing conflicting interests and maintain and preserve client confidences apply with equal force to a prosecuting attorney. *State v. Miner*, 128 Vt. 55, 61-62, 258 A.2d 815, 819 (1969). These principles require that a prosecutor refrain from participating in a criminal case against a former client in a matter involving the former representation. See *id.* at 62, 258 A.2d at 819 ("Fidelity to these standards prohibits an attorney from engaging in a criminal proceeding against an accused he has formerly represented in the subject matter of the prosecution.").

This Court has not had occasion since *Miner* to explore the subject of a prosecuting attorney's participation in a criminal case against a former client. The issue has been extensively litigated elsewhere, however, and general rules have been developed and widely applied. See generally Annotation, *Disqualification of Prosecuting Attorney*

*in State Criminal Case on Account of Relationship with Accused*, 42 A.L.R.5th 581 (1996) (collecting cases); S. Brenner & J. Durham, *Towards Resolving Prosecutor Conflicts of Interest*, 6 Geo. J. Legal Ethics 415 (1993) (examines evolution of, and current standards governing, conflicts of interest resulting from prosecutor's prior representation of defendants). Most states and federal courts today apply a standard derived from Rule 1.9 of the Model Rules of Professional Conduct. Under that provision, "[a] lawyer who has formerly represented a client shall not thereafter represent another person in the same or a *substantially related* matter in which that person's interests are materially adverse to the interests of the fomer client unless the former client consents after consultation." Model Rules of Professional Conduct, Rule 1.9(a) (emphasis added).

"'Substantiality' is present if the factual contexts of the two representations are similar or related.'" *Trust Corp. v. Piper Aircraft*, 701 F.2d 85, 87 (9th Cir. 1983) (quoting *Trone v. Smith*, 621 F.2d 994, 998 (9th Cir. 1980)). Thus, "determining whether an attorney's current representation involves a substantially related matter to that of a former client requires an analyis of the facts, circumstances, and legal issues of the two representations." *State ex rel. McClanahan v. Hamilton*, 430 S.E.2d 569, 572-73 (W. Va. 1993). Once a substantial relationship between the matters is found, "the court need not inquire whether the attorney in fact received confidential information, because the receipt of such information is presumed." *State v. Jones*, 429 A.2d 936, 939-40 (Conn. 1980), *overruled on other grounds, State v. Powell*, 442 A.2d 939 (1982); see also *Smith v. Whatcott*, 757 F.2d 1098, 1100 (10th Cir. 1985) ("Once a substantial relationship has been found, a presumption arises that a client has indeed revealed facts to the attorney that require his disqualification."); *State v. Allen*, 539 So. 2d 1232, 1234 (La. 1989) ("So long as the affected party can show that the matters involved in the previous representation are substantially related . . . [t]he aggrieved party need not prove that [the lawyer] actually obtained confidential information . . . ."); *McClanahan*, 430 S.E.2d at 573 ("Once the former client establishes that the attorney is representing another party in a substantially related matter, the former client need not demonstrate that he divulged confidential information to the attorney.").

The purpose of the presumption is to avoid "'put[ting] the former client to the Hobson's choice of either having to disclose his privileged information in order to disqualify his former attorney or having to refrain from the disqualification motion altogether.'" *McClanahan*,

430 S.E.2d at 574 (quoting *Government of India v. Cook Indus.*, 569 F.2d 737, 740 (2d Cir. 1978)); see also *Smith*, 757 F.2d at 1100 (the presumption "'is intended to prevent proof that would be improper to make'") (quoting *In re Corrugated Container Antitrust Litigation*, 659 F.2d 1341, 1347 (5th Cir. 1981)); *Jones*, 429 A.2d at 940 ("The court cannot inquire into whether the lawyer did *in fact* receive confidential information during his previous employment . . . because . . . [that] . . . would destroy the very same confidences which [the rule] protects."). In addition to safeguarding client confidentiality, the presumptive disqualification serves "to avoid any appearance of impropriety." *Smith*, 757 F.2d at 1100.

These principles apply where the prosecutor has previously represented the defendant in a substantially related civil, as well as criminal, action. See, e.g., *Jones*, 429 A.2d at 940 (prosecutor disqualified from criminal prosecution of defendant whom he had represented twelve years earlier in personal injury action); *Allen*, 539 So. 2d at 1235 (prosecutor's previous representation of defendant in bankruptcy proceeding disqualified him from subsequent prosecution of defendant for arson); *Lykins v. State*, 415 A.2d 1113, 1115 (Md. 1980) (state's attorney disqualified from prosecuting defendant whom he had formerly represented in divorce action); *McClanahan*, 430 S.E.2d at 574-75 (prosecutor's previous representation of defendant in divorce action disqualified him from participating in criminal prosecution for assault); see generally Annotation, *supra*, at 641-54 (collecting cases).

■ Applying these principles here, we are confronted with a patent conflict of interest. The subject matter of Tom Paul's prior representation of defendant in the CHINS proceeding concerned defendant's parenting abilities and her relationships with C.C. and her other children. In the course of that representation, Tom could have been privy to any number of client confidences concerning defendant's treatment of the children. Although the immediate focus of the criminal prosecution focused specifically on defendant's alleged sexual abuse of J.C., it also involved underlying questions relating to the nature of her relationships with all of her children and the extremely troubled family dynamics. Indeed, the crux of the defense case was that J.C. had been physically abused by his father and had fabricated tales of sexual abuse by defendant out of resentment at her inability to protect him. The prosecution's tactical ability to assess the credibility of the defense claims, and to decide which of J.C.'s seven siblings to call as witnesses, could have been informed by confidential

communications between defendant and her former attorney.

The conclusion that the two matters were substantially related, therefore, is self-evident. As such, we need not inquire into what, if any, confidential information in the prosecutor's possession may have worked to defendant's disadvantage, as that is presumed. *Jones*, 429 A.2d at 939-40. Indeed, it is not our intention to explore the veracity of the prosecutor's representation that he had no independent recollection of the earlier CHINS proceeding. That is not the issue. Our concern is for the integrity of the legal process, which suffers as much from the *appearance* as the substance of impropriety. See *Sharplin v. State*, 330 So. 2d 591, 594 (Miss. 1976) (rule of presumptive disqualification is based not only on possible erosion of attorney-client privilege, but "draws upon the broader, more exacting ethical obligations . . . to avoid impropriety as well as the appearance thereof"). In a small rural state like Vermont, where multiple ties to a case are apt to occur, we must be especially sensitive to any appearance of conflict or bias. Fair or not, it is not enough that our public prosecutors be ethical in fact. They must be above any suspicion of wrongdoing.

We thus conclude that where, as here, the prosecuting attorney becomes aware that she or an associate has previously represented the defendant, there is a duty to disclose these circumstances to the court and defense counsel. See *Gray v. State*, 469 So. 2d 1252, 1255 (Miss. 1985) ("Where a potential issue regarding disqualification exists, the proscution shares equally with the defendant the duty of bringing the matter to the attention of the trial court."). It is only through such disclosure that the trial court may explore the nature of the potential conflict to determine whether disqualification of the prosecutor or other steps may be necessary to ensure a fair and impartial trial. It is not sufficient, as the State here urges, to disclose materials (the SRS files) containing evidence of the prior representation and assume that it will be discovered. As the State concedes, the SRS files in this matter were voluminous, and it was far from certain that the defense would find counsel's name inconspicuously buried in the reams of reports, notes, and pleadings. A criminal trial is not a game of hide-and-seek. It is in no one's interest, least of all the State's, to withhold such information and put the entire proceeding at risk.

Indeed, it is apparent that the prosecutor's conduct here tainted the proceedings and the judgment, possibly beyond repair. We note that other courts have not hestitated to reverse a judgment of

conviction where the prosecutor had previously represented the defendant in a substantially related matter. See, e.g., *Reaves v. State*, 574 So. 2d 105, 107 (Fla. 1991) (reversal of murder conviction required where prosecutor had previously represented defendant against grand larceny charges); *Whitaker v. Commonwealth*, 895 S.W.2d 953, 956 (Ky. 1995) (prosecutor's previous representation of defendant required reversal of murder conviction and remand for new trial ); *Allen*, 539 So. 2d at 1235 (arson conviction reversed on basis of prosecutor's prior representation of defendant in bankruptcy proceeding); *Sharplin*, 330 So. 2d at 594 (manslaughter conviction reversed on appeal because of prosecutor's previous representation of defendant in divorce proceeding).

Because of our decision to reverse on other grounds, we are relieved of the necessity to consider whether reversal is compelled here by the prosecutor's previous representation of defendant in a substantially related matter. We emphasize, nevertheless, our concern that such conflicts pose a substantial risk to the integrity of the bench and bar, a risk that prosecutors in future cases should not ignore, as was done here.

*Reversed.*