2009 VT 31

**STATE of Vermont v. Guillermo VARGAS**

[971 A.2d 665]

No. 07-228

¶ 1. March 20, 2009. Guillermo Vargas challenges his conviction for lewd and lascivious conduct. Defendant claims his conviction must be reversed because he was denied his constitutional right to a speedy trial and because the weight of the evidence does not support the conviction. We affirm.

¶ 2. On July 17, 2006, defendant was arraigned on one count of lewd and lascivious conduct in violation of 13 V.S.A. § 2601. The court set bail at $5,000.00, and defendant was taken into custody that

_____

same day for failing to post bail. On July 26, defense counsel sent a letter to the district court manager notifying her that he would be unavailable for hearings on several dates, including November 27. Nevertheless, on October 24, the court scheduled a final jury calendar call for November 27, and scheduled the jury draw for December 6. On October 27, three days after the court's scheduling order, defense counsel moved for a continuance of the calendar call and jury draw due to his previously noticed unavailability on November 27. At this point, the record becomes unclear. While the court appears to have granted defense counsel's motion to continue on October 30, it did not reschedule the calendar call and jury draw on new dates; rather, the docket entries reflect that the calendar call was not rescheduled at all, and that jury draw was set for December 6 again. On November 1, defendant filed a demand for speedy trial, asking that his case be set for trial at the next available date. On December 6, for reasons that are unclear, the court continued the jury draw; the very next day, the court rescheduled the final jury calendar call and jury draw for January 8 and 10, 2007, respectively.

¶ 3. On January 4, defendant's counsel filed a motion to withdraw, claiming conflict of interest; he claimed that his representation of another client precluded his ability to represent defendant ethically. It seems the complainant in defendant's case was an eyewitness for the defense in another criminal case in which counsel represented one of the complainant's relatives. Other conflicting connections between the two cases included counsel's discussions with members of the complainant's family, the Department of Corrections, the police department, and the prosecuting attorney's office. Further, counsel had previously represented three other members of the complainant's family. On January 5, after making a critical

comment about counsel's delay in revealing what it characterized as an obvious conflict, the court granted counsel's motion to withdraw and removed the case from the January 10 jury draw list. Replacement counsel was assigned that same day.

¶ 4. On January 22, defendant filed an opposition to former counsel's motion to withdraw, claiming that counsel's delay "until the 11th hour" violated his Sixth Amendment right to a speedy trial. The court responded in a brief entry order on January 25, finding that the conflict was clear and withdrawal required. Further, the court noted that "[t]he issue of speedy trial is separate from the conflict issue." A day later, at a regular status conference, the court told the defense that "if there is a separate motion argument that there has been a violation of a speedy trial, that needs to still be filed." No such motion was filed.

¶ 5. On April 3, a jury was drawn, and trial was held on April 4 and 5, 2007. According to the testimony of the complainant, on the night of June 29, 2006, she and a female friend, K., were at another female friend's apartment when defendant and another man arrived and stayed for about thirty minutes. As the two men were leaving, M., the apartment resident, called defendant back and asked if he would bring the three women some cigarettes. When defendant returned, the complainant went outside to defendant's car to get the cigarettes. The complainant testified that defendant immediately began to touch her legs and buttocks and when she told him to stop, he grabbed her hand, and made her put her hand into his pants and touch his penis. The complainant claimed that she continued to try to walk away but was prevented from doing so by defendant. At some point, K. walked out of the apartment. Defendant then put the complainant in front of him. According to the complainant, defendant's pants were open and she could feel his erect

penis against her. K. told defendant to let go of the complainant, and the two women went back inside the apartment.

¶ 6. K. testified that, when she went outside, defendant was standing behind the complainant with his arms around her shoulders with the complainant's back to him. The complainant mouthed "help," so K. took her hand, pulled her away, and told defendant to leave the complainant alone.

¶ 7. The jury was instructed that they could find defendant guilty of lewd and lascivious conduct if they unanimously determined that he took the complainant's hand and made her touch his penis or that he pressed his penis to her body, or both. The jury found defendant not guilty of forcing the complainant to touch his penis and guilty of pressing his penis to her body.

¶ 8. On April 18, 2007, defendant filed a motion for acquittal or new trial, arguing that the evidence was insufficient to establish guilt beyond a reasonable doubt and that the jury instructions were "insufficiently clear to [e]nsure the jury differentiated inadvertent contact from physical contact meant to sexually arouse." The court denied the motion, finding that there was sufficient evidence to support the guilty verdict, no grounds for a new trial, and that the jury instructions were sufficient and not confusing. This appeal followed.

¶ 9. Defendant first contends that he was denied a speedy trial in violation of the Sixth Amendment. He did not raise this issue before the trial court, either in a motion to dismiss the prosecution or in his motion for acquittal or new trial. While defendant did file a demand for speedy trial in November of 2006, he was clearly informed by the court in its January 26, 2007 entry order that if his intention was to seek dismissal of his case, a motion to dismiss for violation of his speedy-trial rights was required before the court would assess the matter. This he did not do.

¶ 10. First, we note that this case only vaguely resembles our recent decision in *State v. Brillon*, 2008 VT 35, 183 Vt. 475, 955 A.2d 1108, *rev'd sub nom. Vermont v. Brillon*, 556 U.S. ___, 129 S. Ct. 1283 (2009),[1] the principal case relied on by defendant. The most obvious difference is this: in *Brillon*, we concluded that the defendant "repeatedly and adamantly" demanded that his trial be held and filed multiple motions to dismiss alleging violations of his speedy-trial rights. 2008 VT 35, ¶ 38. Here, though invited to do so by the trial court, defendant failed to seek the remedy of dismissal after his first counsel withdrew. Hence, the court below was denied the opportunity to assess this claim and create a record for our review. The State argues that defendant's failure to file a motion to dismiss for lack of speedy trial amounted to a failure to preserve the issue. We do not address this contention, as the speedy-trial issue is easily resolved on the merits.

¶ 11. In *Brillon*, we followed the traditional approach to speedy-trial claims by applying the four-part balancing test set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972), weighing the conduct of the prosecution and the defendant while examining: (1) the length of delay; (2) the reason for the delay; (3) the extent to which the defendant asserted the speedy trial right; and (4) any prejudice that accrued to the defendant as a result of the delay. *Brillon*, 2008 VT 35, ¶ 12. See also

---

[1] In *Vermont v. Brillon*, the Supreme Court of the United States reversed our decision in *State v. Brillon* on the grounds that we improperly counted delay attributable to the defendant's public defenders against the State for purposes of evaluating the defendant's speedy-trial claim. 556 U.S. at ___, 129 S. Ct. at 1292-93. Because in all other relevant respects *State v. Brillon* remains good law, we refer to it throughout to explain the framework of a speedy-trial analysis.

*State v. Venman,* 151 Vt. 561, 574-75, 564 A.2d 574, 583 (1989). The Supreme Court of the United States recently reaffirmed the four *Barker* factors in *Vermont v. Brillon,* 556 U.S. at ___, 129 S. Ct. at 1290.

¶ 12. As we noted in *Brillon,* the first factor "serves a dual role." 2008 VT 35, ¶ 15. " 'Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance.' " *Id.* (quoting *Barker,* 407 U.S. at 530). However, "[i]f review of the other factors is triggered, the first factor then is balanced along with the other factors in determining whether a speedy-trial violation exists." *Id.* In weighing the length of the delay, we evaluate " 'the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim,' " *id.* ¶ 16 (quoting *Doggett v. United States,* 505 U.S. 647, 652 (1992), and the nature of the case, *id.* (citing *Barker,* 407 U.S. at 531 (noting that "the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge.")).

¶ 13. Here, the length of the alleged delay — nine months between arraignment and trial — is long enough to require that the other factors be considered. See *State v. Unwin,* 139 Vt. 186, 195, 424 A.2d 251, 257 (1980) ("[D]elay of more than six months in a case involving an incarcerated defendant is long enough to require that the other factors be considered."). However, because the delay was not extreme in relation to either the nature of the case or the minimum delay needed to trigger judicial examination of the claim, this factor does not weigh in defendant's favor. While defendant stresses the simplicity of this particular case, it remains that lewd and lascivious conduct is a serious felony. The rules of criminal procedure contemplate that the parties to a felony prosecution will conduct several months of discovery. In particular, Rule 15(a) of the Vermont Rules of Criminal Procedure allows for depositions in felony cases to be held within ninety days of arraignment. We acknowledge that there is some tension between the prosecutorial timeline contemplated by Rule 15(a) and Administrative Order 5's admonition that "[c]ases in which the defendant is in custody *shall proceed to trial* within 90 days from the date of arraignment." A.O. 5, § 2. (emphasis added). And we realize, of course, that defendant was incarcerated pending trial due to his inability to post $5,000 bail. However, we have explained that the administrative order provides neither procedural nor substantive rights to defendants, even in the speedy-trial context. *State v. Snide,* 144 Vt. 436, 441, 479 A.2d 139, 142 (1984). Procedural rules and administrative orders both may have some bearing on the issue of what length of delay triggers review of the other factors, however. But whether the minimum delay necessary to trigger review in the context of this case is three months, by reference to Administrative Order 5, or considerably longer, by reference to Rule 15(a), the four-month delay defendant complains of is not so extreme as to weigh in his favor. A four-month delay in a serious felony case is simply not the stuff of a speedy-trial violation. Cf. *Brillon,* 2008 VT 35, ¶ 1 (vacating convictions where defendant waited nearly three years to be tried for domestic assault).

¶ 14. In relation to the second factor — the reason for delay — defendant focuses on the court's having scheduled calendar call on a day for which his attorney had previously noted his unavailability, the court having granted a continuance on his attorney's motion to rectify this apparent error, and his attorney's belated withdrawal from the case just prior to the rescheduled jury draw. Neutral reasons for delay, such as the negligence of courts, weigh only lightly in favor of a speedy-

trial claimant. See *Vermont v. Brillon*, 556 U.S. at ___, 129 S. Ct. at 1290 ("More neutral reasons such as negligence or overcrowded courts weigh less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." (quotation omitted)). Moreover, the Supreme Court of the United States has recently made clear that, generally, "delays caused by defense counsel are properly attributed to the defendant, even where counsel is assigned." *Id.* at ___, 129 S. Ct. at 1293. In this case, the court's apparent scheduling error — which caused just over one month of delay — cannot be attributed to defendant. However, defendant does not suggest that this error was anything but inadvertent. Neither does he have any quarrel with the manner in which the court reacted to the delays in his case. This is with good reason. Because the first defense counsel's conflict was real, the trial court was compelled to allow withdrawal despite the proximity of trial. Moreover, the court appointed substitute counsel the same day it granted the withdrawal. The new counsel indicated at the status conference a week later that the case was trial-ready. Defendant makes no claim that any part of the unexplained three-month delay that followed could have been avoided by the diligence of the court. Given the above, the second factor weighs, at most, only slightly in defendant's favor.

¶ 15. The third factor requires us to consider "the aggressiveness with which . . . defendant asserted his right to a speedy trial." *Brillon*, 2008 VT 35, ¶ 38 (quotation omitted). Defendant filed one demand for a speedy trial after it became clear that his original final jury calendar call would be rescheduled. Other than in opposing his original counsel's withdrawal, it appears that no further demands for a speedy trial were forthcoming from defendant. And when informed by the trial court that the attorney's withdrawal was unavoidable and that a motion to dismiss for lack of speedy trial was the appropriate way to assert his speedy-trial rights, defendant did nothing during the three months that lapsed before he was brought to trial. While we have held that a motion to dismiss for lack of speedy trial is not the equivalent of a demand for a speedy trial, *State v. Unwin*, 139 Vt. at 196, 424 A.2d at 257, defendant's protracted inaction in the face of the trial court's explicit instructions hardly constituted an aggressive assertion of the speedy-trial right. The aggressiveness with which defendant asserted his right was lacking; this factor does not weigh in his favor.

¶ 16. Neither does the fourth — and most important — factor favor defendant. Defendant alleges no prejudice to the defense of his case as a result of the delay that would call into question whether he was afforded a speedy trial. He mentions a witness who had made statements favorable to him who was unavailable to testify at trial because of absence. What those favorable statements might be, how they related to his case, and whether the timing of the trial played any role in the witness's unavailability, we are left to guess. This vague and unsupported claim that the delay caused the loss of "favorable statements" will not suffice to show prejudice. We clarified in *Brillon* that actual prejudice is not a prerequisite to finding a speedy-trial violation. 2008 VT 35, ¶ 42. Moreover, we recognize that some prejudice inheres in *any* extension of pretrial incarceration. See *Barker*, 407 U.S. at 532 (reasoning that claims of prejudice "should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect," including "to prevent oppressive pretrial incarceration," and "to minimize anxiety and concern of the accused"). However, defendant's recitation that the extension of his pretrial incarceration for

four months caused "increased anxiety and concern," without more, is not sufficient to establish enough prejudice for this factor to weigh in his favor. Cf. *Brillon*, 2008 VT 35, ¶ 45 (reasoning that defendant's nearly three-year wait for trial was "egregious, particularly [because] . . . defendant was incarcerated and entirely or effectively without counsel for substantial periods of time").

¶ 17. In sum, while defendant experienced delay in being brought to trial, it was neither long nor prejudicial enough to have constituted a speedy-trial violation in light of defendant's less-than-aggressive assertion of the right.

¶ 18. Defendant's second claim is that the weight of the evidence does not support his conviction. When considering a challenge to the sufficiency of the evidence, the Court "must determine if the evidence, viewed in the light most favorable to the State and excluding modifying evidence, fairly and reasonably supports a finding beyond a reasonable doubt." *State v. Martin*, 2007 VT 96, ¶ 8, 182 Vt. 377, 944 A.2d 867. It is not our role to reweigh the evidence presented at trial or to act as a fact-finder. *Id.* ¶ 12. Rather, we determine only whether the State's evidence sufficiently and fairly supports the trial court's findings, excluding any modifying evidence. *Id.* We conclude that the State's evidence was sufficient for this purpose.

¶ 19. Defendant takes issue with the fact that the jury found defendant not guilty on the charge that he forced the complainant to touch his penis and guilty on the charge that he pressed his penis to her body. The gist of defendant's claim is that the jury could have come to this verdict only by believing some, but not all, of the complainant's testimony, and that this led to a so-called "compromise verdict." We struck down such a verdict in *State v. Crepeault*, 167 Vt. 209, 704 A.2d 778 (1997). In *Crepeault*, a jury found the defendant guilty of aggravated sexual assault on a general charge even though it

had acquitted her of the only three acts that supported that charge on a special verdict form. We held that the defendant, "[h]aving thus been acquitted of the *only* specifically proscribed acts as to which she was charged and tried . . . cannot have been simultaneously convicted of the same acts under the guise of a general charge." *Id.* at 213, 704 A.2d at 781. Unlike in *Crepeault*, there is nothing inconsistent with the jury in this case having found defendant guilty of some of the alleged acts but not others. Moreover, the jury was free to reach such a verdict by way of believing some, but not all, of the complainant's testimony. As the complainant's testimony fairly and reasonably supports the jury's finding that defendant committed lewd and lascivious conduct by pressing his penis to her body, he is not entitled to a new trial.[2]

*Affirmed.*

---

[2] Defendant argues that the trial court erred by evaluating his Rule 33 motion for a new trial by reference to the standard set forth in Rule 29 for motions of acquittal. Because we hold that the evidence fairly and reasonably supported defendant's conviction, we do not address the extent to which the trial court erred in doing so or whether any such error was prejudicial to defendant. See *State v. Couture*, 169 Vt. 222, 227, 734 A.2d 524, 528 (1999) ("A [Rule 33] motion . . . permits a new trial only where the evidence preponderates heavily against the verdict and a serious miscarriage of justice would otherwise result." (quotation omitted)).