*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2011-287

SEPTEMBER TERM, 2012

| | |
|---|---|
| State of Vermont | } APPEALED FROM: |
| | } |
| | } Superior Court, Lamoille Unit, |
| v. | } Criminal Division |
| | } |
| | } |
| James Menize, Jr. | } DOCKET NO. 117-3-10 Lecr |

Trial Judge: Dennis R. Pearson

In the above-entitled cause, the Clerk will enter:

Defendant appeals his conviction on two counts of aggravated sexual assault, arguing that the convictions must be vacated because he was deprived of his constitutional right to a speedy trial. We affirm.

On March 4, 2010, defendant was arraigned on two counts of having committed lewd and lascivious conduct with a child, in violation of 13 V.S.A. § 2602. At that time, conditions of release were imposed and bail was set at $25,000. Defendant failed to post the required bail and therefore remained incarcerated. On March 19, defendant's request for a public defender was granted, and Attorney Daniel McGuire was assigned to the case on March 24. On April 1, the State amended the charges to two counts of aggravated sexual assault of a victim under the age of thirteen, in violation of 13 V.S.A. § 3253(a)(8). A new arraignment was scheduled for April 14. At the request of defense counsel, the arraignment was rescheduled for April 28. At that second arraignment, the court reestablished the prior conditions of released.

At a June 24 status conference, newly reassigned defense counsel described the case as "a relatively complex case" and requested a six month discovery schedule. The state did not object to the request. The court established a tighter time frame "to keep things on track," and ordered depositions of fact witnesses and initial expert disclosure by October 15.

At a September 1 status conference, the parties informed the court that the State had identified potential prior bad act witnesses. Defense counsel requested a November 30 discovery deadline, with a January trial-ready date. The court set a December 3 cut-off date for discovery, and a December 17 deadline for pretrial motions.

At a November 10, 2010 status conference, the parties confirmed that discovery was on track, and defense counsel indicated that he would make a decision about identifying a defense expert within a few weeks. The only other outstanding issue involved the prior bad act evidence the State was considering introducing. Defense counsel reiterated the request for a January jury draw. He indicated that, given defendant's incarcerated status, if the jury draw were bumped to February, defendant would object.

The case was set for a status conference on January 12, 2011, but that status conference had to be rescheduled on account of bad weather. At the rescheduled status conference on February 16, 2011, defense counsel requested an April jury draw. He stated, "The delay has been preparing the case properly for trial. There's been no undue or prejudicial delay by the State, but it's time for it to be ready to go from my position." The court set an April 4 jury draw.

A marginally insufficient number of potential jurors showed up for the April 4 jury draw. Rather than attempt to draw a jury given the close numbers, defendant expressly waived his speedy trial right for the limited period until the May jury draw. The same thing happened on May 2, at which time the court rescheduled the jury draw for May 31 and the trial for June 1-2.

On May 10, defendant filed a motion to dismiss for lack of a speedy trial. In a May 24, 2011 order, the trial court denied the motion to dismiss, noting that the delay was not inordinate, that there were mostly neutral reasons for the delay, and that defendant had failed to seek bail review during the delay period or show any actual prejudice resulting from the delay. At the conclusion of the June 1-2 trial, the jury found defendant guilty on both counts of aggravated sexual assault. Following an October 19, 2012 hearing, the court imposed two consecutive sentences of ten years to life in prison.

On appeal, defendant asks this Court to vacate his convictions because he was denied his constitutional right to a speedy trial under the United States Constitution.[1]

The federal four-part balancing test set forth in Barker v. Wingo, and applied by this Court, weighs: (1) the length of the delay; (2) the reason for the delay; (3) the extent to which the defendant asserted a speedy-trial right; and (4) any prejudice that accrued to the defendant as a result of the delay. 407 U.S. 514, 530 (1972); State v. Unwin, 139 Vt. 186, 195 (1980). In this case, there was a fifteen-month time period between arraignment and trial, which is significant enough for us to consider all four factors of the test. See State v. Brillon, 2008 VT 35, ¶ 15, 183 Vt. 475, rev'd sub nom. Vermont v. Brillon, 129 S. Ct. 1283 (2009) (noting that there is no need to consider other factors unless length of delay is such that prejudice may be presumed)[2]; State v. Vargas, 2009 VT 31, ¶ 13, 185 Vt. 629 (mem.) (concluding that nine months between arraignment and trial is long enough to require consideration of other factors). We evaluate the length of the delay in terms of the extent to which it stretched beyond an acceptable time period for prosecuting the offense in light of the nature of the case. See Barker, 407 U.S. at 531 (noting

---

[1] Defendant cites the Vermont Constitution as well, but does not make a distinct argument under the Vermont Constitution, and does not assert that a more stringent test should be applied under the Vermont Constitution. "[W]e encourage litigants to address claims under our state charter," but have explained that "[m]erely citing the Vermont Constitution, without providing any analysis of how the state constitutional provision compares with its federal analog, does not adequately present the issue for our review, especially where the argument was not presented in the trial court." See State v. Brillon, 2010 VT 25, ¶¶ 5, 6, 187 Vt. 444. Because the Vermont Constitutional claim was inadequately briefed, we do not address that claim. Id. ¶ 5 ("[W]e will not address state constitutional claims where they are insufficiently raised and inadequately briefed.").

[2] The United States Supreme Court reversed our decision in Brillon on the ground that we improperly counted delay attributable to the defendant's public defenders against the State in evaluating the speedy trial claim. Vermont v. Brillon, 129 S. Ct. at 1292-93. We have since reaffirmed that in all other relevant respects, State v. Brillon remains good law. State v. Vargas, 2009 VT 31, ¶ 10 n.1, 185 Vt. 629 (mem.).

that "the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge").

Neither the State nor defendant attempts to calculate the extent of the delay beyond a normal range of time for prosecuting a criminal case of this nature, but we conclude that the delay, considering the serious charges, is not extreme, even if excessive. See Vargas, 2009 VT 31, ¶ 13 (stating that additional four-month delay beyond permitted discovery period for serious felony such as lewd and lascivious conduct was not so extreme as to weigh in favor of defendant in speedy-trial analysis); cf. Brillon, 2008 VT 35, ¶ 17 (finding three-year delay to be "extreme"). In June 2010, defense counsel sought a six-month discovery schedule, describing the case as "relatively complex." Although the case as ultimately tried was straightforward, the pretrial preparation included discovery and motions concerning other potential prior bad act witnesses, as well as consideration of expert testimony. This factor, at most, weighs only lightly in favor of defendant, given the serious charges involved.

Regarding the second Barker factor, defendant acknowledges that the causes of the delay were neutral in nature. The main causes of delay were reassignment of defense counsel (late April 2010 to late June 2010), inclement weather (January 2011 – February 2011), and the inadequate number of potential jurors at two successive jury draws (April 4, 2011 – May 31, 2011). "Neutral reasons for delay, such as the negligence of courts, weigh only lightly in favor a speedy-trial claimant." Vargas, 2009 VT 31, ¶ 14. That is the case here.

The third factor requires us to consider "the aggressiveness with which . . . defendant asserted [a] right to a speedy trial," Brillon, 2008 VT 35, ¶ 38, keeping in mind "that a motion to dismiss for lack of speedy trial is not the equivalent of a demand for a speedy trial," Vargas, 2009 VT 31, ¶ 15. We find no record that defendant expressly invoked his speedy trial right prior to filing his motion to dismiss; at most, in November 2010 defense counsel asked to try the case in January 2011, and in February 2011 defense counsel stated, "There's been no undue or prejudicial delay by the State, but it's time for it to be ready to go from my position." He did so in the context of a request for an April jury draw, and when a potentially too-small jury pool arrived on April 4, he expressly waived his speedy trial claim for the limited time period until the May draw. Given the record as a whole, this factor does not weigh in defendant's favor. See Vargas, 2009 VT 31, ¶ 15 (lack of aggressiveness in pursuing speedy trial right did not weigh in defendant's favor where defendant filed one demand for speedy trial after his original final jury calendar call was rescheduled, with no further demands for a speedy trial even after court suggested that a motion to dismiss for lack of speedy trial was the appropriate way for defendant to assert his speedy-trial rights in the wake of his attorney's unavoidable withdrawal); cf. Brillon, 2008 VT 35, ¶ 38 ("[D]efendant repeatedly and adamantly demanded to be tried.").

Finally, the most important of the four factors is the prejudice resulting from the delay. Brillon, 2008 VT 35, ¶ 40. Although he suggests broadly that the delay may have permitted the State's young witnesses to mature and become more articulate, defendant does not seriously contend that the delay prejudiced his case at trial, having conceded as much as recently as April 4, 2011. We acknowledge that "some prejudice inheres in any extension of pretrial incarceration;" although we held on the facts of the Vargas case that a recitation that the extension of pretrial incarceration for four months caused "increased anxiety and concern," without more, was not sufficient to establish enough prejudice to weigh in defendant's favor. Vargas, 2009 VT 31, ¶ 16. In this case, the relatively modest delay, caused by neutral factors such as weather and inadequate jury pools, and in the absence of aggressive assertion of the speedy trial right by defendant, does not compel the "extraordinary" remedy of vacating defendant's convictions and dismissing the serious charges against him. Cf. Brillon, 2008 VT

35, ¶ 1 (taking "extraordinary step" of vacating convictions and dismissing charges based on three-year period of delay).

     <u>Affirmed</u>.

BY THE COURT:

_____
Marilyn S. Skoglund, Associate Justice

_____
Brian L. Burgess, Associate Justice

_____
Beth Robinson, Associate Justice