2013 VT 26

## State of Vermont v. John Turner

[70 A.3d 1027]

No. 11-140

Present: **Reiber, C.J., Dooley, Skoglund, Burgess and Robinson, JJ.**

Opinion Filed April 12, 2013

---

*William H. Sorrell*, Attorney General, and *Ultan Doyle* and *David Tartter*, Assistant Attorneys General, Montpelier, for Plaintiff-Appellee.

*Allison N. Fulcher* of *Martin & Associates*, Barre, for Defendant-Appellant.

¶ 1. **Skoglund, J.** On September 3, 2008, defendant John Turner was arraigned on one count of lewd or lascivious conduct with a child and one count of unlawful restraint of a victim less than sixteen years of age. His first trial occurred in March 2010, and resulted in a hung jury. His second trial occurred in July 2010, and he was convicted of unlawful restraint and acquitted of lewd

or lascivious conduct. He now appeals, claiming his conviction must be reversed because he was denied his constitutional right to a speedy trial. We affirm the conviction.

¶ 2. Upon his arrest and arraignment in 2008, the court assigned public defender services and appointed Attorney Douglas Willey. Defendant notified Attorney Willey that he wanted to have a speedy trial. An investigator from Attorney Willey's office informed defendant of the need for discovery, depositions, motions and other matters necessary to prepare for trial. Defendant was advised it was premature to file a motion for speedy trial at that point. In November 2008, following a status conference, a discovery stipulation was filed with the court, indicating that the parties would be trial ready by June 1, 2009. Depositions were taken and transcripts ordered. In June 2009, the case was scheduled for an August jury draw. Meanwhile, more depositions were conducted and further witness leads were developed. As a result, Attorney Willey filed a motion to continue the jury draw scheduled for August 12, 2009.

¶ 3. On September 9, 2009, defendant filed an unsigned pro se motion to dismiss all charges on the grounds that his right to a speedy trial had been violated. He also sent a multi-page letter to the judge venting his frustration with counsel, alleging that his counsel was not providing adequate representation and expressing his desire to have a quick resolution to the charges. A signed copy of the motion to dismiss was filed on October 6, 2009. Both documents were sent to Attorney Willey and the state's attorney. Based on defendant's allegations, Attorney Willey filed a motion to withdraw, which was granted at an October 13 status conference. Attorney Joseph Benning was appointed on October 20, 2009 to represent defendant. A hearing on the motion to dismiss was set for December 10, 2009. The hearing was rescheduled for December 21 after the State requested a continuance for medical reasons. On that day, the court heard and denied a motion to exclude in-court identification of defendant.

¶ 4. The court heard defendant's motion to dismiss on February 8 and February 22, 2010. At the hearing, Attorney Willey acknowledged that he had no direct contact with defendant from September 2008 until May 2009, but claimed his office maintained contact with defendant through a staff investigator. The investigator testified about his investigation of leads provided by defendant and of discussions with defendant as to how the defense

should be conducted. Defendant testified as to his dissatisfaction with Attorney Willey's representation of him and stated that he did not want to go to trial while represented by Attorney Willey. He further testified he was aware that a change of attorneys would further delay a trial date.

¶ 5. The court advised the parties that, in all likelihood, the trial would go forward before a decision was rendered on the speedy-trial issue. And, in fact, that is what happened. The trial took place March 17 and March 18, 2010 and resulted in a mistrial due to a hung jury. Nonetheless, the motion hearing judge issued her decision regarding the speedy-trial issue on March 22, 2010, denying defendant's motion to dismiss and concluding that his constitutional right to a speedy trial was not violated. Defendant appeals that decision.

¶ 6. In reviewing a decision which determines whether a defendant's constitutional right to a speedy trial has been violated, the trial court's legal conclusions are reviewed de novo and its findings of fact are reviewed under a clearly erroneous standard. *State v. Brillon*, 2008 VT 35, ¶ 14, 183 Vt. 475, 955 A.2d 1108, *rev'd on other grounds sub nom. Vermont v. Brillon*, 556 U.S. 81 (2009). On appeal, defendant challenges only the trial court's legal conclusions, and therefore, our review is de novo.

¶ 7. To assess whether there has been a violation of the constitutional right to a speedy trial, this Court has adopted the four-factor balancing test set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972); see *State v. Vargas*, 2009 VT 31, ¶ 11, 185 Vt. 629, 971 A.2d 665 (mem.); see also *Brillon*, 2008 VT 35, ¶ 14. Our most recent decision on this issue was *State v. Vargas*, 2009 VT 31, wherein we explained that we weigh the conduct of the prosecution and the defendant while looking at (1) the length of delay; (2) the reason for delay; (3) the extent to which the defendant asserted the speedy trial right; and (4) any prejudice to the defendant from the delay. *Id.* ¶ 11. The first step is to determine whether the length of the delay was presumptively prejudicial. If not, it is unnecessary to inquire into the other balancing factors, for the right to a speedy trial was not violated. See *id.* ¶¶ 11-12. However, if the delay is long enough to be presumptively prejudicial, then that factor is balanced along with the remaining factors in determining whether a speedy-trial violation exists. *Brillon*, 2008 VT 35, ¶ 15.

■ ¶ 8. In this case, approximately twelve months passed from the date of arraignment to the date of the speedy trial complaint; it was another six months before the conclusion of the first trial. The total delay was about eighteen months.[1] This delay is sufficient to require consideration of all of the factors. See *Vargas*, 2009 VT 31, ¶ 13 (finding that a delay of nine months was sufficient to require consideration of the factors); *State v. Benjamin*, 2007 VT 52, ¶ 17, 182 Vt. 54, 929 A.2d 1276 (concluding that eight-month delay from complaint to disposition is not per se prejudicial but is sufficient to trigger analysis of the other factors); *State v. Unwin*, 139 Vt. 186, 195, 424 A.2d 251, 257 (1980) ("We believe that a delay of more than six months in a case involving an incarcerated defendant is long enough to require that the other factors be considered.").

¶ 9. Thus, we turn to the reason for the delay. Like in *Vargas*, the crime at issue is a serious felony, and the rules of criminal procedure contemplate several months of discovery. See 2009 VT 31, ¶ 13 (noting that Vermont Rule of Criminal Procedure 15(a) affords parties ninety days to take depositions). The delays at issue were not in the commencement of the hearings but in the completion of pretrial hearings and the discovery process. See *Benjamin*, 2007 VT 52, ¶ 17 (distinguishing delays in commencement of hearings from delays in completion of hearings timely commenced). Further, the case had multiple witnesses, eight of whom the State called at the defendant's first trial. Several months of discovery were needed to prepare for the trial. Therefore, as the trial court found, this factor does not weigh in favor of the defendant.

¶ 10. The second factor, the reason for the delay, is ultimately a series of events, the vast majority of which are attributable to defendant either directly or through his attorney. As found by the trial court, discovery took several months with additional evidence and witnesses disclosed after the anticipated conclusion of discovery. Thus, discovery was extended. Throughout this period, defendant neither objected nor invoked his right to a speedy trial. Then, as discovery neared completion, defendant insisted on new trial counsel. As noted above, defendant understood that replacing

---

[1] Defendant has not claimed that the four-month time period between his first and second trial amounted to a violation of his right to a speedy trial. Therefore, only the eighteen-month time period after his arraignment is at issue.

Attorney Willey with new counsel would delay his trial. The only delay that the court attributed to the State — the eleven days from December 10 to December 21 — was "insignificant" in that it was only a few days with "neutral reasons for delay." Given this, the second factor does not weigh in defendant's favor.

¶ 11. The extent to which the defendant asserted the speedy-trial right is the third factor to be considered. It requires us to consider "the aggressiveness with which . . . defendant asserted his right to a speedy trial." *Brillon*, 2008 VT 35, ¶ 38 (quotation omitted). It cannot be said that defendant aggressively asserted his right. He filed a single motion to dismiss.[2] Defendant never made a demand upon the court to schedule an immediate trial. Defendant did not oppose extensive discovery. He did not oppose original counsel's motion to withdraw and understood replacing counsel would delay his trial. Defendant notified the court of his request for speedy trial a year after arraignment. Because defendant did not aggressively demand a speedy trial, this factor does not weigh in his favor.

¶ 12. Finally, the fourth factor looks at the actual prejudice as a result of the delay. This is the most important factor. *Vargas*, 2009 VT 31, ¶ 16; see also *State v. Yudichak*, 151 Vt. 400, 405, 561 A.2d 407, 411 (1989). Defendant below failed to specify any prejudice as a result of the passage of time. In *Barker*, the U.S. Supreme Court held that prejudice should be assessed "in the light of the interests of defendants which the speedy trial right was designed to protect." 407 U.S. at 532. The Court identified prevention of oppressive pretrial incarceration, minimization of anxiety and concern, and, most importantly, limiting the possibility that the defense will be impaired. *Id.*

---

[2] As we noted in *State v. Unwin*, "[a] motion to dismiss based on an alleged violation of the right to a speedy trial is not the equivalent of a demand for an immediate trial." 139 Vt. at 196, 424 A.2d at 257. A demand would give the State the opportunity to promptly schedule a trial while a motion to dismiss would offer only what the U.S. Supreme Court referred to as the " 'unsatisfactorily severe remedy of dismissal.' " *Id.* (quoting *Barker*, 407 U.S. at 522). In *Barker*, the U.S. Supreme Court concluded that a failure to demand an immediate trial was not enough to result in an automatic waiver of defendant's constitutional right. 407 U.S. at 528. Nonetheless, it reasoned, "defendant's assertion of or failure to assert his right to a speedy trial is one of the factors to be considered in an inquiry into the deprivation of the right." *Id.*; see *Unwin*, 139 Vt. at 196, 424 A.2d at 257.

¶ 13. On appeal, defendant merely points to his pretrial incarceration but fails to specify how he was prejudiced. Defendant mentions that his main alibi witness was not called to testify at the second trial. While the death or disappearance of a witness during the delay for trial may severely hinder a defendant's case, *Barker*, 407 U.S. at 532, a "vague and unsupported claim that the delay caused the loss of favorable statements will not suffice to show prejudice." *Vargas*, 2009 VT 31, ¶ 16 (quotation omitted). Stated another way, "[a] general allegation of loss of witnesses . . . is insufficient to establish prejudice." *United States v. Beckham*, 505 F.2d 1316, 1319 (5th Cir. 1975) (quotation omitted). Here, we are left to guess how this main alibi witness might have helped defendant, how the testimony related to the case, and whether the timing of the subsequent trial played a role in the witness' absence. Cf. *Vargas*, 2009 VT 31, ¶ 16. Without more, defendant's cryptic statement does not serve to establish sufficient prejudice for this factor to weigh in his favor.

¶ 14. Upon consideration of these four factors, we conclude that defendant's constitutional right to a speedy trial was not violated.

*Affirmed.*

¶ 15. **Burgess, J.,** concurring. While I concur in the Court's decision to reject defendant's claim that he was denied his Sixth Amendment right to a speedy trial, I would reach this conclusion by a different and more efficient route. This alternative would align our speedy-trial jurisprudence with the framework intended by the U.S. Supreme Court in its seminal decision in *Barker v. Wingo*, 407 U.S. 514 (1972), and restore the courts' ability to dispose of unfounded speedy-trial claims in a more expeditious manner.

¶ 16. The test for evaluating speedy-trial claims established by the high court in *Barker* requires that we first consider the length of the delay from accusation to trial. As the high court explained: "The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Id.* at 530. Thus, if a court concludes that the delay in question fails to meet the threshold standard, the claim fails as a matter of law and no further inquiry is required. See, e.g., *United States v. Chahia*, 544 F.3d 890, 899 (8th Cir. 2008) (finding that delay between indictment and trial was "too short a time

period to be presumptively prejudicial" and thus concluding that it "need not consider the remaining factors to find that no Sixth Amendment speedy trial violation occurred"); *State v. Goss*, 777 P.2d 781, 785 (Kan. 1989) (holding that delay was not "clearly presumptively prejudicial as enunciated by *Barker v. Wingo*, and hence there is no necessity for inquiry into the other factors that go into the balancing").

¶ 17. Although the *Barker* Court did not elaborate on the "presumptively prejudicial" inquiry, it did explain that the delay sufficient to "provoke such an inquiry is necessarily dependent upon the *peculiar circumstances of the case.*" *Barker*, 407 U.S. at 530-31 (emphasis added). By way of example, it observed that the delay "tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." *Id.* at 531. In a later decision, the Court explained that *Barker* contemplates a "double enquiry," requiring a threshold assessment of whether the state has failed to "prosecute[ ] [the] case with customary promptness," and only if this is shown must the court then consider the length of delay as one factor among many to be weighed in the balance. *Doggett v. United States*, 505 U.S. 647, 652 (1992).

¶ 18. Although seemingly straightforward, the "presumptively prejudicial" trigger has been a source of continuing uncertainty. One early commentator observed that *Barker* was "not quite clear" as to how to determine whether a delay is sufficient to trigger further inquiry, H. Uviller, *Barker v. Wingo: Speedy Trial Gets a Fast Shuffle*, 72 Colum. L. Rev. 1376, 1383 (1972), and lower courts have since proven this observation to be depressingly accurate. Indeed, despite the Supreme Court's express pronouncement that the delay sufficient to trigger a plenary analysis is "necessarily dependent upon the peculiar circumstances" of the case, many courts — including our own — have instead opted for rigid timeframes entirely divorced from the circumstances. See, e.g., *State v. Keith*, 160 Vt. 257, 267, 628 A.2d 1247, 1253 (1993) (concluding that it was "unnecessary to examine the reasons for the delay" in holding that 20-month delay was sufficient "to trigger a review of the other three [*Barker*] factors"), *overruled on other grounds by State v. Brillon*, 2008 VT 35, ¶ 42, 183 Vt. 475, 955 A.2d 1108, *rev'd on other grounds sub nom. Vermont v. Brillon*, 556 U.S. 81 (2009); *State v. Unwin*, 139 Vt. 186, 195, 424 A.2d 251, 257 (1980) ("We believe that a delay of more than six months in a case involving an incarcerated defendant is long

enough to require that the other [*Barker*] factors be considered."). The preference for such bright lines over context has not, however, led to consistent results. Compare *United States v. White Horse*, 316 F.3d 769, 774 (8th Cir. 2003) (holding that "a nine and one-half month interval [between accusation and trial] is too short to be presumptively prejudicial"), with *Wells v. Petsock*, 941 F.2d 253, 258 (3d Cir. 1991) (holding that seven-month delay was "long enough to require plenary inquiry into the remaining *Barker* factors"), and *City of Billings v. Bruce*, 1998 MT 186, ¶ 55, 965 P.2d 866 ("[W]e establish 200 days as the necessary length of time to trigger further speedy trial analysis.").

¶ 19. Treating the passage of time alone as a "delay" triggering a *Barker* analysis distracts from, rather than vindicates, the right to speedy trial. When no actual, untoward delay in proceedings can be demonstrated, motions to dismiss — as in this case — prompt unnecessary pretrial litigation resulting in true delay. Reading *Unwin* to treat as "delay" the fact that a defendant is not brought to trial within six months of arraignment, when nothing can be identified as unduly postponed, made late, restrained, put off or otherwise hindered secures no constitutional right to a speedy trial and is wasteful — particularly where, as here, defendant agreed to many of the delays and never expressly demanded that he proceed to trial.

¶ 20. It is time to restore to this threshold inquiry the context contemplated by the high court in *Barker*. Although the Supreme Court has since noted that lower courts "have generally found" delays "approach[ing] one year" to be presumptively prejudicial, *Doggett*, 505 U.S. at 652 n.1, it has never retreated from its original position in *Barker* that the length of delay necessary to address the other speedy-trial factors is "necessarily dependent" on the fact-specific circumstances of the case, nor endorsed the position of this Court in *Keith* that "the reasons for the delay" are essentially irrelevant to the analysis. 160 Vt. at 267, 424 A.2d at 1253.

¶ 21. With this understanding in mind, an analysis of the undisputed record evidence here provides no basis to conclude that the State failed in any respect to prosecute this case with its "customary promptness," *Doggett*, 505 U.S. at 652, and thus no grounds to conclude that the delay was "presumptively prejudicial" necessitating any further inquiry. The docket entries in this matter disclose that defendant was arraigned on felony charges in

September 2008 and assigned counsel. At the first regularly scheduled conference on November 19, 2008, the parties were directed to file a discovery schedule within thirty days. Defendant agreed to a discovery schedule timely filed on December 16, 2008, which indicated that several planned depositions would be completed by March 2009, and the matter would be ready for trial by June 1, 2009.

¶ 22. Several depositions were conducted in January 2009, and a pretrial conference was scheduled in April 2009 for the following month. Following the conference, attended by defendant, the matter was set for the next jury draw in August 2009. Defendant noticed and conducted several additional depositions in July 2009, and thereafter moved in early August to continue the jury draw based on the recent disclosure of additional witnesses. The court granted the motion, and the case was scheduled for the next jury draw in October 2009. In the interim, in early September 2009, defendant moved to exclude any in-court identification of defendant, and the court scheduled the matter for a hearing.

¶ 23. Thus, when defendant filed his first pro se motion to dismiss on September 9, 2009, nothing in the record to that point — or in the motion — suggested that the matter had proceeded in any manner inconsistent with the normal, orderly pretrial process. The same may be said of the ensuing months leading up to defendant's first trial in March 2010. The undisputed record evidence for this period discloses that, in October 2009 — based on defendant's expressed dissatisfaction with his assigned counsel — the court granted defense counsel's motion to withdraw, appointed new counsel, and scheduled the next status conference for December 2009; denied defendant's motion to exclude in December 2009, and scheduled defendant's motion to dismiss for a hearing in February 2010; conducted a two-day hearing on defendant's motion in February 2010; set the matter for the next jury draw in March 2010; disposed of a series of contested motions by the State to introduce prior bad act evidence in early March 2010; and ultimately held a two-day jury trial at the end of that month.

¶ 24. As the Supreme Court cogently observes, "[o]ur speedy trial standards recognize that pretrial delay is often both inevitable and wholly justifiable" in order to meet the needs of the parties to identify, interview, and depose witnesses, file and oppose pretrial motions, and sometimes — as here — accommodate a

defendant's request to substitute counsel. *Doggett*, 505 U.S. at 656. Nothing in defendant's motion to dismiss or the record before the trial court raised any factual dispute or suggestion that the delays following defendant's arraignment were attributable to any cause other than routine pretrial proceedings, or that the State had failed to prosecute the matter with diligence.

¶ 25. As this case vividly illustrates, regardless of the length of time between arraignment and trial, not every motion to dismiss for a speedy-trial violation based on passage of time alone necessarily meets the "presumptively prejudicial" test. Consistent with *Barker*, the trial court here could easily and properly have reviewed the motion to dismiss in light of the undisputed record evidence and rejected the claim at the threshold, without the additional, unnecessary, and wasteful expenditure of judicial time and resources of a two-day evidentiary hearing. In the long run, such an approach would have been far more protective of defendant's speedy-trial rights.

¶ 26. I am authorized to state that Chief Justice Reiber joins this concurrence.